167 So. 286

**LEWIS et al. v. LINKETT.**

4 Div. 872.

Supreme Court of Alabama.

March 19, 1936.

Rehearing Denied April 23, 1936.

Farmer, Merrill & Farmer and G. M Harrison, all of Dothan, for appellants.

O. S. Lewis, of Dothan, for appellee.

THOMAS, Justice.

The suit was for personal injury, the result of alleged poisonous contents of a bottled drink that was purchased and consumed.

The assignments of error insisted upon are the refusal of the trial court to give the general affirmative charge requested, and denying the defendants' motion for a new trial on the ground that the verdict was excessive.

The rules governing the giving or refusing of affirmative instruction need not be restated. McMillan v. Aiken et al., 205 Ala. 35, 40, 88 So. 135.

A case of this nature was the subject of Reichert Milling Co. v. George, 230 Ala. 3, 162 So. 393; Birmingham Chero-Cola Bottling Co. v. Clark, 205 Ala. 678, 89 So. 64, 17 A.L.R. 667; Try-Me Beverage Co. et al. v. Harris, 217 Ala. 302, 116 So. 147; Whistle Bottling Co. v. Searson, 207 Ala. 387, 92 So. 657; McCarley v. Wood Drugs, Inc., 228 Ala. 226, 153 So. 446.

■■ It has been declared that the presence of foreign matter deleterious to health in a bottle containing a soft drink is evidence of negligence. Under the evidence the questions of fact were for the jury. There was no error in refusing affirmative instruction requested.

■ The many assignments of error are limited to those insisted upon in argument, and are so considered. Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 So. 158.

■ It is insisted there was error in declining to allow Dr. Roberts to answer the following question:

" 'No, I asked you if in your opinion as a physician, the Coca-Cola with the metal in it, assuming there was metal in the Coca-Cola she drank, the kind she says, or her husband says, assuming that she drank that concoction, from the history she gave you and from your own examination of her on those two visits,—I asked you as a physician if her nervous condition was not due, in your opinion, to a psychological or mental attitude and not to the Coca-Cola that she drank?' "

"I examined that substance that day they showed it to me and I can't tell the jury that is the same substance that was shown me on that day as being in the Coca-Cola bottle. I couldn't say for certain it was copper. I haven't any opinion on it. Looked like zinc or copper to me at that time and I so expressed myself before them. It looked like copper or zinc. I said it was copper in my judgment—looked like copper."

And on redirect examination Dr. Roberts testified: "It is my recollection that I told them if it was zinc it was poisonous, too."

The witness had theretofore testified: "I saw the substance they said was in the bottle. I saw the Coca-Cola bottle with the amount in it. I got some of it in my office that was poured out of a bottle. There was more left in the bottle than is there, about up to that ring there (indicating). It could have been that the contents of this Coca-Cola that she drank caused, or had tendency to cause, the nervousness, and it could have come from the mental condition of Mrs. Linkett. She would have to be actuated along that line. What she drank would not have given her that nervousness, but I would not say it did not give her a nervousness to think she had drunk something that was poison. Those things are actuated from a psychological side. I would say that her nervousness was actuated by reason of the attitude—thinking that she had drunk Coca-Cola with a poisonous substance in it. The fact that she drank the Coca-Cola and her fear after she drank it would have to go together in making any kind of examination. Both would have to go together."

Assuming that the witness had qualified as a psychologist and that the question was proper, there was no error in the ruling of the trial court, since that witness had given his opinion of the matter or result of which inquiry was sought—as to the nervous condition of plaintiff when he made his examination of that patient.

The witness further testified: "Not any Coca-Cola I ever drank or was served in the drug stores was served with this kind of stuff in it. I have seen it more or less for 25 years. They say carbonated water is a combination of carbon and water. It depends very largely on the amount of carbonic acid in the bottle as to what effect it would have on zinc, and the strength of the poison would be the strength of the carbonic acid used to carbonate the water—used on zinc. The strength of it would depend on that."

The witness was then asked: " 'If it was carbonic put in it to carbonate the water, the effect it would have on the zinc would be contingent upon the amount of carbonic acid?' " To which he answered: " 'Yes sir.' "

Thus the jury had the facts and the opinion of the physician as to the facts and the result thereof upon plaintiff from drinking the contents of the bottle.

■ There was no error in declining the introduction in evidence of the sanitary inspection certificates showing the general state of cleanliness of the plant in question as to some other time, which was beside the specific issue of fact being tried.

The motion for a new trial was overruled without error. Under the evidence and the

rule of law that obtains, the verdict and judgment cannot be held excessive.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.