39 So.2d 706

**BIRMINGHAM COCA-COLA BOTTLING CO. et al. v. SELLERS.**

**6 Div. 690.**

Court of Appeals of Alabama.

Feb. 22, 1949.

Rehearing Denied March 29, 1949.

Benners, Burr, Stokely & McKamy and R. Greye Tate, all of Birmingham, for appellants.

Lipscomb & Brobston, of Bessemer, for appellee.

## HARWOOD, Judge.

The appellee, Ethel Sellers, filed her complaint against the "Coca-Cola Bottling Company of Birmingham, a corporation," charging negligence in the bottling and selling of a beverage known as Coca-Cola containing a deleterious substance, i. e., a cockroach or bug of some kind.

The original complaint was amended by striking from defendant's name the words "of Birmingham, a corporation," and by adding after the words "Coca-Cola Bottling Company," the words "a partnership composed of Crawford Johnson, Jr., Allen A. Johnson, et als., and Crawford Johnson, Inc., a corporation."

The amended complaint was again amended to change the name of the "Coca-Cola Bottling Company" so that same would read "The Birmingham Coca-Cola Bottling Company."

The appellants moved to strike the amendment and to discontinue the cause on the ground that the amendment had worked an entire change of parties.

This motion was overruled by the court.

The amendment designating the company sued as a partnership, rather than a corporation, worked no change of parties. It merely served to properly designate and bring into court the legal entity subject to suit and intended to be sued in the first instance. Ewart v. Cunningham, 219 Ala. 399, 122 So. 359; Manistee Mill Co. v. Hobdy, 165 Ala. 411, 51 So. 871, 138 Am.St.Rep. 73; May v. Dothan Buick Co., 243 Ala. 37, 8 So.2d 448.

Nor do we find any abuse on the part of the trial judge in permitting the word "Birmingham" to be added to the words "Coca-Cola Bottling Company," etc. The right of amendment is to be liberally indulged. Oden v. McCraney, 235 Ala. 363, 179 So. 191. If an error is made in the name of a party, it may be corrected by an amendment, and whether the amend-ment introduces a new party, or relates to the same party by a different name, is a question of fact for the court to determine. Springer v. Sullivan, 218 Ala. 645, 119 So. 851; Van Landingham v. Alabama Great Southern R. Co., 243 Ala. 31, 8 So.2d 266; Ex parte Textile Workers Union of America, 249 Ala. 136, 30 So.2d 247; Hill v. Burton, 30 Ala.App. 594, 10 So.2d 302. In the amendment the names of the members of the firm composing the "Coca-Cola Bottling Company" were set forth. These same parties were alleged as members of the "Birmingham Coca-Cola Bottling Company." This fully justified the court's conclusion that adding the word "Birmingham" before the words "Coca-Cola Bottling Company," in no wise wrought a change in the entity sought originally to be sued, but merely corrected the name of that entity to reflect its true name.

The evidence presented by the appellee, (plaintiff below), was directed toward showing that on 15 July 1944 she bought a case of Coca-Cola from Joe Massey who operated a filling station. Some of the bottles from this case, without having been uncapped, were placed in her refrigerator. Later she removed one of the bottles, uncapped it, and drank a portion of the contents, and became ill. She then held the bottle between herself and a light and observed an object in the bottle that had the appearance of a roach, though "it was larger than a roach; it was swelled up in there or I would have swallowed it. It couldn't have come out of the bottle for being swelled up." According to Mrs. Sellers, the appellee, the contents of the bottle had an odor, though she did not notice this before drinking the part she did consume.

The bottle was inscribed with the words "Coca-Cola" on its side, and the words "Birmingham, Alabama," appeared on the bottom.

Mrs. Sellers further testified that she vomited about five minutes after drinking the Coca-Cola. She called Dr. Smith at Muscoda and he told her to drink a glass of hot salty water. She was sick the rest of that day (Saturday) and until Sunday

night, being nauseated at intervals during that time.

Appellee's husband and daughter gave testimony tending to corroborate the appellee.

Mrs. Dulaney, a neighbor of appellee, testified that she went to appellee's home on the afternoon of 15 July 1944, when called by the appellee. Upon her arrival appellee told her she had been vomiting, and she observed a Coca-Cola bottle on a table that looked to be about half full. She picked up the bottle and it appeared to have a roach in it.

Mr. Massey, the filling station operator, testified he was in business on 15 July 1944, and sold Coca-Colas in connection with his filling station. He sold Mrs. Sellers a case of Coca-Cola once or twice a month, and sold her some in July of 1944, though he did not remember what day in July.

Shortly after he had sold Mrs. Sellers a case of Coca-Colas she returned with a Coca-Cola bottle that had a bug or something in it.

Mr. Massey stated that he bought the Coca-Colas sold by him from Crawford Johnson.

Appellee also introduced into evidence interrogatories propounded by her to appellants, and the answers thereto.

In these answers appellants stated that the correct name of the firm was the Birmingham Coca-Cola Bottling Company; that it was a partnership, and the members of the firm were as stated in the amended complaint; that it bottled Coca-Cola at its plant in north Birmingham, and all Coca-Cola bottled by it was distributed by Crawford Johnson and Co., a corporation.

The evidence presented by the appellants, defendants below, consisted of the testimony of Mr. C. R. Phillips, production manager of the Birmingham Coca-Cola Bottling Company. His testimony was directed toward showing the excellent character of the equipment in defendants plant, the sanitary conditions prevailing in said plant, and in the process of bottling Coca-Colas therein, and the methods and procedure used in said plant which tended to negative the possibility of any foreign substance finding its way into the bottled product of defendants plant.

█ It is our opinion purely a question of fact was presented to the jury by the conflicting evidence of this case, and that the evidence presented by the plaintiff, if believed by the jury, under the required rule, was sufficient to establish defendants' liability and support the verdict of the jury and the judgment of the court entered pursuant to such verdict. No error therefore attached to the action of the court in denying appellant's written request for the affirmative charge, nor in denying appellants' motion for a new trial, because of the insufficiency of the evidence.

Appellants argue that the court erred in giving written charge 1 at the request of the appellee, in that such charge is defective in failing to postulate that the presence of the roach therein must coincide with the opening of the bottle, thus negativing the question of whether the roach may have gotten into the bottle after it was opened.

█ The evidence presented by the plaintiff was positively to the effect that the roach was in the bottle at the time it was opened. No evidence of any real probative value contradicts this phase of appellants' evidence. The charge therefore conforms with the evidence presented. Even assuming the validity of appellee's contention, the charge was not positively erroneous, but at most insufficient. This being so it was the duty of the appellants to request an explanatory charge correcting such deficiency before they can complain thereof on appeal. See 2 Ala.Dig., Appeal and Error, ⬩ 216(1) (2) and (3) for numerous cases enunciating such doctrine. Additional reasons for not predicating error on the action of the court in giving appellee's written charge 1 are that no cases are cited in support of the proposition or argument relating to this point, and we also note that the record omits to indicate whether the charge was given at the request of the plaintiff or defendant. Gorum v. Mott, 33 Ala.App. 525, 35 So.2d 381.

Appellants further argue that the amount of damages ($400) awarded the plaintiff is excessive. In Bellingrath v. Anderson, 203 Ala. 62, 82 So. 22, the suit was for damages sustained by drinking part of a bottle of beverage put up by defendant, which bottle contained a dead mouse. The plaintiff was thereby "in a degree poisoned; was made acutely sick, requiring the care of a physician; and suffered great discomfort from nausea, etc., for many hours." The plaintiff was awarded damages of $500, and our Supreme Court concluded that such sum was not excessive.

The only difference between the Bellingrath case, supra, and the instant case, in so far as determining a basis for the amount of damages, is that in the instant case plaintiff was not actually attended by a physician, but only consulted one over a telephone. This difference, if it be a difference, is not sufficient to destroy the necessary authoritativeness of the application of the Bellingrath case, supra, to the instant case, particularly in view of present day value of a dollar as compared with its value in 1919, the date of the Bellingrath decision.

It is our opinion that this cause is due to be affirmed, and it is so ordered.

Affirmed.