241 So.2d 327

**OPELIKA COCA–COLA BOTTLING COMPANY, Inc.**

v.

**Albert JOHNSON.**

5 Div. 12.

Court of Civil Appeals of Alabama.

Aug. 19, 1970.

Rehearing Denied Sept. 9, 1970.

Brown & McMillan, Auburn, for appellant.

Russell, Raymon & Russell, Tuskegee, for appellee.

THAGARD, Presiding Judge.

This is a run of the mill bug-in-a-bottle case, except that it appeared to be a worm instead of a bug.

The testimony for the plaintiff was to the effect that the plaintiff, while a patient in a tuberculosis ward at the Tuskegee Veterans Administration Hospital, bought one of defendant's bottles of Coca-Cola from a vending machine maintained by defendant in said ward; drank a portion of the same; felt some foreign object touch his mouth; looked into the bottle and discovered a foreign object that looked like a worm in a partial state of decomposition; became violently nauseated, and suffered from attacks of nausea and abdominal pain for some two weeks.

The testimony of the plaintiff as to the existence of the worm-like object in the bottle at the time of the drinking by the plaintiff was corroborated by another inmate of the ward, who testified that he saw the plaintiff take the bottle from the vending machine and that the plaintiff was sitting by the witness watching a television program when the worm-like object was discovered.

The defendant pleaded the general issue in short by consent and the case was submitted to a jury. There was a verdict for the plaintiff for $2500.00 and judgment was rendered accordingly.

Defendant's motion for a new trial was denied by the court, after which this appeal.

There were ten assignments of error, at least three of which were waived. The thrust of the assignments argued by appellant is four-fold: (1) That the court erred in refusing to give the affirmative charge with hypothesis for the defendant; (2) That the evidence was insufficient to support the verdict and judgment; (3) The verdict and judgment were excessive; and (4) The court erred in overruling appellant's motion for a new trial. We think it necessary to discuss only (2) and (3), because if there is no merit in either of them, there is no merit in (1) and (4).

Appellant says that in a long line of cases the Supreme Court has said that proof of the presence in a bottled drink of a foreign body is itself proof of negligence, and cites as an example Coca-Cola Bottling Co. v. Crook, 222 Ala. 369, 132 So. 898; and (says appellant) "In effect the rule means that negligence is presumed when a foreign substance or thing is found in a bottled drink."

Some of the Alabama cases say that the presence of such deleterious foreign matter in a sealed bottled drink is evidence from which the jury may infer negligence on the part of the bottler, so as to present a jury question. Lewis et al. v. Linkett, 232 Ala. 233, 167 So. 286; Alabama Coca-Cola Bottling Co. v. Causey, 28 Ala.App. 115, 180 So. 588; Gardner et al., d/b/a Seven Up Bottling Co. v. Baker, 40 Ala.App. 374, 113 So.2d 695.

Some hold that the presence of foreign deleterious matter in food makes a prima facie case of negligence on the part of the manufacturer and makes it incumbent on the manufacturer to go forward and answer the prima facie case. See Collins Baking Co. v. Savage, 227 Ala. 408, 410, 150 So. 336.

Others hold that the presence of such foreign matter in a sealed bottle drink raises a *presumption* of negligence on the part of the bottler. (Emphasis supplied.) Dr. Pepper Co. v. Brittain, 234 Ala. 548, 176 So. 286; Gardner et al., d/b/a 7-Up Bottling Co. v. Sumner, 40 Ala.App. 340, 342, 113 So.2d 523.

■ But, whatever the language used, all of the cases hold in effect that when a foreign unwholesome substance is found in a sealed package or bottle of food or beverage, there arises an inference, a prima facie case or presumption of the existence of negligence on the part of the manufacturer or bottler. The burden is then upon the manufacturer or bottler to go forward with evidence to rebut or overcome such presumption or prima facie case. The determination of whether such burden is sufficiently carried is for the jury

■ In the case at bar there was ample testimony, if believed, that there was a foreign object resembling a partially decomposed worm or cocoon in the sealed bottle of Coca-Cola and from which the jury might infer that the bottler had been negligent in the bottling of this particular bottle of Coca-Cola.

■ Appellant undertook to rebut the evidence of negligence by showing the use in its bottling operations of modern machinery and methods that are calculated to make it practically impossible for foreign matter to exist in its drinks. But in Dr. Pepper Co. v. Brittain, supra, Judge Foster wrote:

"When defendant offers without dispute evidence that its processes are such that during the operation foreign matter cannot find its way into the bottled drink or other sealed package, it does not always follow that defendant is entitled to an affirmative charge even predicated upon the usual hypothesis. The situation resembles in legal effect that which

exists with respect to the liability of a railroad company for causing fire to be set out from sparks from its locomotive. The jury must first find either by direct or circumstantial evidence that the fire was caused from sparks emitted by defendant's engine. There is then a presumption of law that the railroad company was negligent either in respect to the equipment or handling of the engine, and it is due to rebut that presumption. If this is done without conflict, and there are no conflicting inferences from the evidence, the jury should be charged generally for defendant on the usual hypothesis. But, when the evidence shows that an engine properly equipped and handled will not emit sparks sufficient to cause the fire in question, it follows that, if in fact the sparks did cause the fire, there is shown a circumstance which discredits evidence of proper equipment and due care in handling, making a case for the jury. * * *" (234 Ala. at page 549, 176 So. at page 287)

And in Coca-Cola Bottling Co. v. Crook, supra, the Supreme Court said:

"While defendant's testimony tended to show the bottling plant of best type and equipment, also its careful operation and inspection, the issue of negligence vel non was for the jury on the whole evidence. The affirmative charge was properly refused." (222 Ala. at page 370, 132 So. at page 898)

And in Try-Me Beverage Co. et al. v. Harris, 217 Ala. 302, 304, 116 So. 147, 148, the court, speaking through Justice Bouldin, said:

"The full evidence as to the modern equipment of the plant and the details of operation, including inspection both before and after filling the bottle, *serve rather to emphasize than to disprove negligence* of some employee in passing into the market a bottle containing the articles disclosed in the evidence." (Emphasis supplied.) (217 Ala. at page 304, 116 So. at page 148)

Next, appellant argues that there is no presumption that the presence of a foreign substance or thing in a bottled drink is of necessity the proximate cause of any illness closely following the consumption of a portion of the drink; that all the cases say the foreign substance must be "deleterious" or "harmful" to the consumer; that there is no actual proof in this case of a causal connection between the drinking of the Coca-Cola and the plaintiff's illness; and that there was evidence that (1) The plaintiff had a peptic duodenal ulcer, which in itself can cause nausea and illness, (2) The plaintiff had been taking a medicine called "P.A.S." which in some instances causes digestive illnesses and (3) The hospital where plaintiff was a patient determined by a laboratory test of the so-called "worm" that it was not harmful.

The undisputed testimony was that the discovery of the "worm" was made on August 3, 1968, and on that day, shortly after drinking of a part of the contents of the bottle, the appellee became violently nauseated and his attacks of nausea occurred intermittently for about two weeks. Thereafter, on August 21, a G. I. series of X rays was made and Dr. Barnes read them as disclosing a small peptic ulcer of the duodenal canal, also a deformity that the doctor said might indicate that the appellee had had an ulcer in the past and that it had healed, leaving scar tissue. Dr. Barnes testified that he was unable to form an opinion from the X rays as to how long the ulcer had been there. Dr. Barnes also testified that the patient's abdominal pains had ceased by the time the X rays were made. We think the jury might very well have inferred that the nausea was induced by the shock of having found the worm-like object in the drink and that the prolonged nausea either generated a new ulcer or reactivated the old.

Dr. Barnes also testified that some time before the worm episode he had put the appellee on a medicine called "P.A.S." that can and sometimes does cause nausea. However, he further testified that according to the hospital records appellee had

not complained of nausea or abdominal suffering until after the "worm" incident, although he had been taking P.A.S. for quite some time before, and that he was taking P.A.S. when he was discharged from the hospital.

In Stokely-Van Camp, Inc. v. Ferguson, 271 Ala. 120, 122 So.2d 356, a suit based on physical damages incurred from eating contaminated pork and beans, Chief Justice Livingston said, speaking for the court:

"We see no good reason to here set out the tendencies of the evidence. On the one hand, the evidence tended to support the theory that plaintiff was made ill by eating the product of the appellant. On the other hand, the evidence tended to prove that his illness was the result of an automobile accident at a prior time. Suffice it to say, the evidence was in conflict, and it was a case for the jury." (271 Ala. at page 124, 122 So.2d at page 359)

Also, in C. C. Hooper Cafe Co. v. Henderson, 223 Ala. 579, 137 So. 419, the court said:

"Defendant's charges 8, 9, and 3 were properly refused. That plaintiff's illness 'could' have resulted from other causes than fish poisoning was not the issue. 'Could' in such connection may import a mere possibility.

"Did the evidence reasonably satisfy the jury that the sickness in fact resulted from fish poisoning? was the inquiry on this point." (223 Ala. at page 582, 137 So. at page 422)

■ We are clear to the conclusion that in the case at bar a jury question was presented as to the proximate cause of appellee's gastric illness. It is true that the court permitted one witness to testify, over appellee's objection, that he overheard a conversation between appellee and another in which it was said that the laboratory report showed that the "worm" or foreign matter was "harmless." Without deciding upon the admissibility of the evidence, we conclude that the laboratory report meant that the foreign object was not some poisonous chemical compound. But we judicially know from common experience that, even though their chemical content may be harmless, people do not voluntarily eat worms or drink beverages that contain worms or worm-like substances, and that to involuntarily do so may upon discovery trigger a traumatic reaction resulting in nausea and other gastric disturbances.

Finally, appellant insists that the verdict and judgment were excessive.

In Stokely-Van Camp, Inc. v. Ferguson, supra, a contaminated food case in which the plaintiff suffered a reaction and illness similar to that of appellee in this case, the Supreme Court refused to disturb a verdict and judgment of $4500.00.

In Magic City Bottling Co. v. Tolbert, 34 Ala.App. 516, 41 So.2d 619, decided in July, 1949, wherein the facts (a decomposed worm in a bottled drink) and resulting damages (serious and painful gastric disturbances) were strikingly similar to the facts and damages in this case, the court held that a judgment for $750.00 was not excessive, and said:

"In the Sellers case [Birmingham Coca-Cola Bottling Co. v. Sellers, 34 Ala.App. 355, 39 So.2d 706] we took into account the present value of a dollar as compared with its value in former years. This observation and truism must be applied also in the instant case." (34 Ala.App. at page 519, 41 So.2d at page 621)

■ Taking into account the holdings in the cases cited in the two next preceding paragraphs and the value of the dollar now as compared to 1960 when the *Stokely-Van Camp* case was decided and as compared to 1949 when the *Magic City Bottling Co.* case was decided, we conclude that we should not hold that the verdict and judgment were excessive in this case.

Affirmed.