CONNIE KAY INGERSOLL, BY OTIS A. INGERSOLL, HER FATHER AND NEXT FRIEND, APPELLANT, V. MONTGOMERY WARD & COMPANY, INCORPORATED, A CORPORATION, APPELLEE.

106 N. W. 2d 197

Filed November 25, 1960. No. 34817.

*Maupin, Dent, Kay & Satterfield, Thomas O. David,* and *James J. Duggan,* for appellant.

*Baskins & Baskins,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought in the district court for Lincoln County by Connie Kay Ingersoll, by her father and next friend, Otis A. Ingersoll, plaintiff, against Montgomery Ward & Company, a corporation, defendant, for damages due to personal injuries alleged to have been sustained by Connie Kay Ingersoll when she caught her hand in a defective door at the defendant's store in North Platte, Nebraska, on December 12, 1957.

The defendant moved the trial court to render a summary judgment in favor of the defendant because the pleadings, answers to interrogatories, and depositions on file showed that there was no genuine issue as to any material fact, and that the defendant was entitled to a judgment dismissing the plaintiff's action as a matter of law.

The trial court sustained the defendant's motion for summary judgment and dismissed the plaintiff's petition with prejudice.

The plaintiff filed a motion for new trial which was overruled. From the order overruling the plaintiff's motion for new trial, the plaintiff perfected appeal to this court.

It is admitted that the defendant was a corporation qualified to do business in this state and that it maintained and operated a retail store at North Platte, located

in the Masonic Temple Craft Building in North Platte.

The plaintiff's amended petition alleged that the store was equipped with swinging doors constructed of plate glass; that on or before July 19, 1957, the doorchecks on the south front doors of the defendant's store were in a worn and defective condition which permitted the doors to swing rapidly from 10 to 24 inches past the closed position with great speed and force, rendering the doors unsafe and dangerous to persons passing through them; and that on or about July 19, 1957, the defendant, by its agent Walter J. Allinger, inspected the doors and discovered the defective and dangerous condition of the doorchecks. The acts of negligence charged against the defendant were as follows: In permitting the doors to remain in defective and dangerous condition for a period in excess of 140 days after the defects of the doors were discovered by the defendant; in failing to warn defendant's customers of the dangerous and defective condition of the doors and to prevent customers from using the doors while they were in such condition; and in failing to repair the doors within a reasonable time after the defective and dangerous condition of the doors was discovered.

The plaintiff's amended petition further alleged that on December 12, 1957, the plaintiff entered the store with her parents for the purpose of examining merchandise offered for sale; that thereafter the plaintiff and her parents departed from the store passing through the south front doors; that at about the time the plaintiff and her parents were leaving the store a woman entered the store through the south doors and at that time plaintiff's hand was caught between the halves of the south front doors; and that as a direct and proximate result of defendant's negligence the plaintiff suffered severe injuries.

The defendant's answer alleged that it was the duty of the owners of the Masonic Temple Craft Building to keep the doors in repair on the property occupied by

the defendant, and not the duty of the defendant to make repairs to the doors. The answer further denied all allegations of the plaintiff's amended petition not admitted.

The plaintiff's reply was a general denial of the allegations of the defendant's answer, except such as were specifically admitted.

The plaintiff assigns as error that the trial court erred in sustaining defendant's motion for summary judgment, and in overruling the plaintiff's motion for a new trial.

Before summarizing the facts in this case we deem it advisable to set forth certain propositions of law pertinent to a determination of this appeal.

The Summary Judgments Act authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is clear what the truth is, and that no genuine issue remains for trial. The purpose of the statute is not to cut litigants off from their right of trial by jury if they really have issues to try. Mecham v. Colby, 156 Neb. 386, 56 N. W. 2d 299.

In considering a motion for summary judgment the court should view the evidence in the light most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences that may be reasonably drawn therefrom. See, Illian v. McManaman, 156 Neb. 12, 54 N. W. 2d 244; Dennis v. Berens, 156 Neb. 41, 54 N. W. 2d 259; Ramsouer v. Midland Valley R. R. Co., 135 F. 2d 101; Dulansky v. Iowa-Illinois Gas & Electric Co., 191 F. 2d 881.

The court examines the evidence on motion for summary judgment, not to decide any issue of fact presented in the case, but to discover if any real issue of fact exists. See, Dennis v. Berens, *supra;* Sprague v. Vogt, 150 F. 2d 795. In other words, the court can merely determine that an issue of fact does or does not exist. If such an issue does exist, the Summary Judg-

ments Act has no application; if such issue does not exist, a motion for a summary judgment affords a proper remedy. The burden is upon the moving party to show that no issue of fact exists, and unless he can conclusively do so the motion for summary judgment must be overruled. See, Illian v. McManaman, *supra*; Dennis v. Berens, *supra*, and cases cited therein; Kleinknecht v. McNulty, 169 Neb. 470, 100 N. W. 2d 77.

In Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112, this court said: " 'All that plaintiff was required to do was to establish, to a reasonable probability, that the accident happened in the manner alleged in his petition, and where facts and circumstances are established from which the way the accident happened could be logically inferred, it was not error to submit that issue to the jury.' Markussen v. Mengedoht, 132 Neb. 472, 272 N. W. 241."

The facts are presented by the depositions of Connie Kay Ingersoll, her father Otis A. Ingersoll, her mother Esther Ingersoll, Carlie Andre, Walter H. Kohn, manager of the defendant's store in North Platte, and certain interrogatories and the answers thereto.

For convenience we will refer to Connie Kay Ingersoll as Connie, to her father as Otis, to her mother as Esther, and to Walter H. Kohn as the manager.

The manager of the store testified that he had served in that capacity for a period of 1 year and 8 months.

A superintendent's inspection report of the defendant's store prepared by Walter J. Allinger on July 19, 1957, is in the record. The first paragraph of the report reads as follows: "The Rixson door checks on two of the glass entrance doors are worn out of (sic) should be replaced. These doors swing from 10″ to 24″ past closed position when released and no further adjustment could be made."

Another exhibit titled "Public Accident Report" was made by the manager of the store and bears his signature. This report was written in longhand and reads as

follows: "Mother says that Connie was following her father out door but dallied behind to look at something, then Connie caught edge of one door, and a woman coming in the other door, released it and the two doors came together and cut off first joint, 2nd and 3rd fingers of left hand."

There were certain interrogatories propounded by the plaintiff to the defendant. The most pertinent questions and answers appearing therein are as follows: Question 10. "Were any repairs made or started upon the south front doors of the retail store in North Platte, Nebraska between August 5, 1957 and December 12, 1957?" Answer. "No." Question 14. "What was the defect in the south front doors of the retail store in North Platte, Nebraska?" Answer. "The door checks were worn." Question 27. "Was Montgomery Ward & Company in exclusive possession and control of the interior of the ground floor building located at 5th and Dewey Streets in North Platte, Nebraska, in which it was maintaining and operating a retail store December 12th, 1957?" Answer. "Yes." Question 28. "Was W. H. Kohn in sole and complete charge of the premises on behalf of Montgomery Ward and Company * * * subject to supervision only by a superior or superiors located some place other than North Platte, Nebraska, on December 12th, 1957?" Answer. "Yes."

There was a letter dated February 12, 1958, to the Masonic Temple Craft, Inc., attention of Wilfred C. Boldt, relating to the accident of December 12, 1957, calling attention to the injuries received by Connie on that date, and in which it was stated: "It is our understanding of the accident that the cause was the fact that the door checks were not working. This condition was called to your attention on August 5, 1957 by Mr. Vogt of Wards Real Estate Department and again verbally on or about December 5, 1957 by the Store Manager."

The record shows that Otis, his wife Esther, and

Connie went to North Platte on December 12, 1957, and entered the defendant's store about noon of that day for the purpose of looking at merchandise. They stayed in the store approximately 5 minutes. Otis testified that his wife went out the door first, he followed her, and Connie was a step or two behind him. Connie screamed, and he turned and observed that the ends of her fingers were cut off. He further testified that he did not see the accident happen; that only one lady saw the accident; that he did not know how Connie got her fingers in the door; that the lady coming from the south who entered the store let go, and both doors were very free and "swung completely without any hesitation or stoppage whatsoever" past the center stopping point; and that he was holding the door open when the lady coming from the south entered into the door, and when she let her door go is evidently when Connie's fingers were cut off.

Connie testified that she did not remember how the accident happened. At the time her deposition was taken she was 9 years of age. She further testified that the doors were both closed until her mother pushed the door open.

Esther testified that she did not see what happened, but noticed the lady coming into the store as they were going out; that when Connie screamed the lady was probably well within the store; that there were a lot of people there; and that she did not have any idea who the lady who entered the store was, but she did remember seeing her enter the store and let loose of the door.

Carlie Andre testified that at the time the accident happened she was a little bit south of the south entrance of the store, going north; that she was not close enough to see Connie's hand caught in the door, but was close enough to see her parents out on the sidewalk, and to hear the door come shut with a thud and Connie scream; that she saw Connie's father come running back toward

her; that people were coming and going, and she walked toward the door but did not go inside; that she noticed the little stubs of Connie's fingers and blood spattered on the floor 4 or 5 feet inside the door; and that she did not actually see the accident.

We believe there is a genuine issue of fact that exists in this case as to whether or not Connie lost her fingers by virtue of the defective condition of the doors in the building occupied by defendant, whether or not the defendant was negligent in failing to have the defective condition of the doors corrected, and that the defendant had notice of the defective condition of the doors for more than 140 days.

Under the authorities heretofore cited, we conclude that the trial court was in error in rendering a summary judgment in favor of the defendant.

For the reasons given herein, we reverse the judgment and remand the cause for trial.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.