SUSAN FOURNELL, APPELLANT, V.
USHER PEST CONTROL CO., A CORPORATION, APPELLEE.
DAVID FOURNELL ET AL., APPELLANTS, V.
USHER PEST CONTROL CO., A CORPORATION, APPELLEE.

305 N.W.2d 605

Filed May 8, 1981. No. 43200.

Richard D. Sievers of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellants.

Donald R. Witt of Baylor, Evnen, Curtiss, Grimit & Witt for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, District Judge.

McCOWN, J.

This is an action for damages for mental or emotional disturbance resulting from alleged negligence of the defendant in connection with a termite inspection of

plaintiffs' home. The District Court sustained defendant's motion for summary judgment and plaintiffs have appealed.

In February 1978 the plaintiffs, a young couple with two small children, were in the process of purchasing a new home. As a part of an offer to purchase the house plaintiffs requested a termite inspection and requested that it be done by the defendant. The defendant made the termite inspection and a written report was prepared and delivered. The report stated that there was termite tubing in two described areas and gave an estimated cost of treatment. The plaintiffs interpreted the report to mean that there was evidence of termite activity at one time but that there was no damage present and that defendant recommended treatment. Plaintiffs then employed Mid-State Pest Control, which treated the house for termites. The sale was then closed and plaintiffs moved into the house on March 28, 1978.

In May or June 1978 plaintiff Susan Fournell, in tearing up carpet in the living room, discovered extensive termite damage in the flooring. Plaintiffs called Mid-State and later the defendant, and defendant found active termites in the house and recommended that the house be treated. Plaintiffs then removed the siding and discovered termite activity running all the way to the roof, involving mud sills, plates, windows, doors, casings, and siding. A structural engineer examined the house and estimated the extent and cost of the necessary repairs. Work began in the latter part of June and plaintiffs did much of it themselves.

On July 3, 1978, Susan Fournell consulted a physician because she was constantly crying, could not sleep, and was deeply depressed. On July 19, 1978, she was hospitalized under the care of a psychiatrist who treated her for reactive depression. She was discharged from the hospital on August 6, 1978. She was again hospitalized on September 13, 1978, and discharged

on September 21, 1978. She was again hospitalized on October 10, 1978, and discharged on October 18, 1978, as still depressed but no longer actively suicidal. She has continued to be treated by psychiatrists since October of 1978, and the evidence is that her mental and emotional disturbance was caused by the discovery of the termite infestation and damage to her home.

Plaintiffs brought separate actions against the defendant involving Susan's claim for damages for emotional disturbance and David's claim for medical expenses incident to that claim, and a cause of action for property damage. Mid-State Pest Control was joined as a third-party defendant. After the taking and filing of various depositions and answers to interrogatories, the defendant filed motions for summary judgment as to all the causes of action. The District Court overruled defendant's motion for summary judgment with respect to plaintiffs' claim for property damage, and that cause of action remains pending in the District Court.

The District Court found from the evidence adduced that two elements essential to a recovery under Nebraska law for the negligent infliction of emotional trauma were not present: (1) That physical injury resulted from the emotional trauma; and (2) That defendant's negligence placed the injured party, Susan Fournell, in fear of peril for her own safety. The court therefore found that there was no genuine issue as to any material fact and that defendant was entitled to judgment as a matter of law, and dismissed plaintiffs' remaining petitions. This appeal followed.

In the present case there are many genuine issues of fact, including the facts necessary to determine whether either the defendant or the third-party defendant was negligent and whether the plaintiff Susan Fournell suffered severe emotional disturbance with resulting physical disability. However, unless

we were to recognize the right of a plaintiff to recover under the circumstances here, none of the facts are material because even if the factfinder resolved every factual dispute in favor of the plaintiff, as we are required to assume would be done, she still would have failed to state a cause of action for negligent infliction of emotional trauma.

Traditionally, recovery for the negligent infliction of emotional trauma was viewed with disfavor by the courts, and the older cases generally rested on broad statements that there was no duty to refrain from the negligent infliction of mental distress. See *Spade v. Lynn & Boston Railroad*, 172 Mass. 488, 52 N.E. 747 (1899). Modern cases have developed various rules circumscribing defendant's liability in such cases. Basically, such rules rest on policy considerations and there have been few modern cases in Nebraska upon which to base a formulation of current policy.

In the case of *Owens v. Childrens Memorial Hospital, Omaha, Nebraska*, 347 F. Supp. 663 (D. Neb. 1972), the federal district court interpreted the position of this court at that time and determined that even though Nebraska had abrogated the "impact" rule there was still a requirement that some type of physical injury result from the negligently inflicted suffering and that recovery for emotional disturbance must be limited by at least requiring the plaintiff to have been within the "zone of danger or actually put in fear for his own safety." That interpretation was correct.

Restatement (Second) of Torts § 436 A (1965) provides: "If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."

In the case at bar, when the termite damage was discovered by the plaintiffs no physical injury resulted

to anyone, nor was Susan Fournell placed in fear of bodily harm to herself or anyone else. The plaintiffs' claim for damages here rests on mental and emotional disturbance and distress alone.

It should be noted also that under the Restatement rules relative to liability for the negligent infliction of emotional distress or disturbance, §§ 313, 436, and 436 A, liability is predicated on conduct deemed negligent because it involves an unreasonable risk of causing bodily harm to a person, not damage to property. On the evidence in this case it is evident that conduct involving the failure of the defendant to discover termite damage to plaintiffs' house did not create an unreasonable risk of causing bodily harm to Susan Fournell as a matter of law.

Plaintiffs assert that the case of *Rasmussen v. Benson*, 135 Neb. 232, 280 N.W. 890 (1938), fully supports plaintiffs' position in the case at bar. We disagree. *Rasmussen* is distinguishable on the basis pointed out in the *Owens* case. It is also apparent that the court in *Rasmussen* regarded the defendant's conduct in disposing of a poison label and selling bran with a tremendous amount of arsenic in it at a public sale without warning or labeling of any sort as creating such an unreasonable risk of harm to persons as to be reckless and wanton to such a degree that it approached intentional injury. In any event, the case at bar is no current version of *Rasmussen.*

Policy considerations primarily determine whether a particular plaintiff is entitled to redress for a particular wrong or that a defendant is entitled to restrictions limiting liability. Be that as it may, the law must also recognize that not every human loss arising out of another's conduct constitutes a legal injury for which compensation will be available. See Prosser, Law of Torts 1 (4th ed. 1971).

The judgment of the District Court was correct and is affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I find that I must respectfully dissent from the majority in this case.

At the outset, I think it important to keep in mind that only a limited question is before us. Simply stated, it is whether the defendant is entitled to a summary judgment because, as a matter of law, Mrs. Fournell has failed to state a cause of action and failed to raise a genuine issue of fact. In contrast, we have in essence decided this case as if a demurrer had been filed by the defendant. It could very well be that, upon trial, Mrs. Fournell would be unable to prove the essential elements of her claim or the jury would be unwilling to find in her favor. That is not the issue before us. The sole and only issue before us is whether Mrs. Fournell is entitled to have her day in court.

The matter of granting summary judgment is not to be lightly taken and is never to be a substitute for trial. In *Ingersoll v. Montgomery Ward & Co., Inc.*, 171 Neb. 297, 300, 106 N.W.2d 197, 199 (1960), we said: "In considering a motion for summary judgment the court should view the evidence in the light most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences that may be reasonably drawn therefrom." And in *Hiram Scott College v. Insurance Co. of North America*, 187 Neb. 290, 295, 188 N.W.2d 688, 691 (1971), we said: "Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt. Any reasonable doubt touching the existence of a genuine issue of material fact must be resolved against the moving party." In *McDowell v. Rural Water Dist. No. 2*, 204 Neb. 401, 282 N.W.2d 594 (1979), we further said: "Before a summary judgment may be granted, the moving party must establish that there exists no genuine issue as to any material fact in the case, and that under the facts he is entitled to a judgment as a matter of law. Even where there are no conflicting evidentiary

facts, a summary judgment is not appropriate if the ultimate inferences to be drawn from those facts are not clear. In considering such a motion, the trial judge must take that view of the evidence most favorable to the party against whom summary judgment is directed, giving to that party the benefit of all favorable inferences that may reasonably be drawn from the evidence." (Syllabus of the court.) And in *Blue v. Champion International Corp.*, 204 Neb. 781, 285 N.W.2d 511 (1979), we said: "Where reasonable minds may differ as to whether an inference supporting the ultimate conclusion sought can be drawn, summary judgment should not be granted." (Syllabus of the court.) And, finally, in *State ex rel. Schuler v. Bd. of County Commissioners*, 205 Neb. 647, 649, 289 N.W.2d 514, 515 (1980), we said: "The burden is upon the party moving for summary judgment to show that no issue of fact exists, and unless he can conclusively do so, the motion must be overruled."

The majority in this case has concluded that Mrs. Fournell cannot, as a matter of law, recover because of two reasons. The first reason given by the majority is that one may not recover for emotional disturbances without there being a concurrent bodily injury; and, secondly, because "as a matter of law" a woman cannot reasonably become emotionally distressed because her home is destroyed by termites. I shall attempt to address both matters in this dissent.

The majority's conclusion that one may not recover for emotional disturbance without bodily harm is based, in part, upon the Restatement (Second) of Torts § 436 A (1965), set out in full in the majority opinion. I believe that the rule is outmoded and should be rejected. While the Restatement rule quoted may reduce the number of claims made, it is totally out of step with modern medical knowledge. To suggest that a psychological injury is not as grievous as a physical injury is to ignore reality. And to further suggest that if one can be sufficiently mentally dis-

turbed so as to suffer a coronary occlusion, he or she may recover in tort, but if he or she simply becomes an emotionally distressed person, reduced to sniveling and crying and attempting suicide, he or she may not recover, does not seem to me to be founded upon any rational basis.

It is interesting to note that while the American common law rule, exemplified by the Restatement, is based at least in part upon early English law, England has long since abandoned that requirement.

The case which was frequently relied upon by American courts as authority for denying recovery for negligently inflicting mental anguish, absent physical injury, was *Victorian Railways Comm. v. Coultas*, 13 App. Cas. 222, 57 L.J.P.C. 69 (1888). In *Coultas*, the plaintiff was severely frightened when the gatekeeper at a railway crossing negligently allowed her to cross the track in front of an approaching train. There was no impact or immediate physical injury. However, she suffered severe nervous shock, fainted, and experienced impairment of her eyesight and memory. The trial court sustained a verdict for the plaintiff. However, on appeal, the Privy Council held that damages arising from mere terror, without any physical injury, could not be considered as a foreseeable consequence of the negligence of the defendant, and the verdict was set aside. For a further discussion, see Smith, *Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli*, 30 Va. L. Rev. 193 at 196-97 (1944); Campbell, *Injury Without Impact*, 1951 Ins. L.J. 654.

Within 2 years, however, another English court had taken a conflicting view of the issue and thus was born the controversy which remains with us today. A case arising in Ireland, *Bell v. Great Northern Railway Co.*, 26 L.R. Ir. 428 (1890), totally repudiated the reasoning of *Coultas*. The opinion of Baron Palles is often quoted: "In conclusion, then, I am of the opinion that, as the relation between fright and injury to the

nerve and brain structures of the body is a matter which depends entirely upon scientific and medical testimony, it is impossible for any Court to lay down, as a matter of law, that if negligence cause fright, and such fright, in its turn, so affects such structures as to cause injury to health, such injury cannot be 'a consequence which, in the ordinary course of things would flow from the' negligence, unless such injury 'accompany such negligence in point of time.'" *Id.* at 442. It is of passing interest to note that, in 1890, a court with limited medical knowledge concluded that one could not, as a matter of law, resolve such an issue. Yet in 1981 we conclude, as a matter of law, that absent bodily harm, one may not recover for emotional disturbance.

In 1901 the King's Bench abandoned the rule laid down in *Coultas*. In the case of *Dulieu v. White & Sons*, [1901] 2 K.B. 669, a woman who was frightened into giving premature birth, when the defendants drove a pair-horse van into the main room of her husband's pub while she was standing behind the bar, sued for damages. The nervous shock which she suffered from the incident made her ill and gave rise to premature birth of her child. Relying largely upon the *Bell* case, Justice Kennedy overruled the demurrer, commenting upon the remoteness objection which had led courts to deny recovery in such action. He said that remoteness refers not to relations in time but to the continuity of causation. He further commented that nonliability for negligent invasion of another's mental tranquility is generally explained by the practical difficulties of proving the injury and not by the lack of any legal wrong. Justice Kennedy concluded in *Dulieu* by holding that where a physical disability is caused by fright or mental disturbance, the subject of the requested compensation may be objectively evaluated and no logical reason remains for denying recovery. After *Dulieu*, English law became settled that actual injury or

disability negligently caused by psychic stimuli was actionable, whether or not the plaintiff suffered an impact or contemporaneous injury.

The present English rule has been recognized by some of the American courts, though the specific theories upon which such recovery has been permitted have varied from jurisdiction to jurisdiction. Louisiana, which has adopted the French civil code, has historically recognized the right to recover such damages without any physical harm. See, *Romero v. Town of Welsh*, 370 So. 2d 1286 (La. App. 1979); *J. B. Lahaye Farms v. La. Dept. of Highways*, 377 So. 2d 1286 (La. App. 1979); *Elston v. Valley Electric Membership Corp.*, 381 So. 2d 554 (La. App. 1980). Further, see Cooks, *Mental Anguish Arising from Property Damage*, 3 So. U.L. Rev. 17 (1976).

A similar approach has been taken by the Texas courts. In *Cactus Drilling Co. v. McGinty*, 580 S.W.2d 609 (Tex. Civ. App. 1979), a drilling company improperly used the plaintiff's land. The court held that recovery for mental anguish arising from that act was recoverable, saying: "Given an injury to property which is actionable independently and separately from mental anguish, compensation for mental anguish which proximately results from the wrongful injury is one element of actual damages." *Id.* at 610. For other cases to the same effect, see *Hendry v. United States*, 280 F. Supp. 27 (S.D.N.Y. 1968), *aff'd* 418 F.2d 774 (2d Cir. 1969); *Petition of United States*, 418 F.2d 264 (1st Cir. 1969). At least five jurisdictions have held that an independent cause of action for negligently inflicted mental distress exists.

In 1970 two states at opposite ends of the nation's geographic boundaries (Maine and Hawaii) adopted new rules allowing recovery for negligently inflicted mental distress, absent any physical injury. In the Maine decision, *Wallace v. Coca-Cola Bottling Plants, Inc.*, 269 A.2d 117 (Me. 1970), the Supreme Judicial Court had for consideration an action arising against a

soft-drink bottler for injuries allegedly resulting to plaintiff who drank from a bottle containing an unpackaged prophylactic. The plaintiff became ill after he returned home and began to think about his experience. In sustaining a jury verdict, the Maine court said: "In the light of advances which have been made by medical science and the improvement in investigatory techniques since this Court decided *Herrick* in 1921 [*Herrick v. Publishing Co.*, 120 Me. 138, 113 A. 16 (1921)], we decline to follow it any longer. Instead, we adopt the rule that in those cases where it is established by a fair preponderance of the evidence there is a proximate causal relationship between an act of negligence and reasonably forseeable [sic] mental and emotional suffering by a reasonably forseeable [sic] plaintiff, such proven damages are compensable even though there is no discernable [sic] trauma from external causes. The mental and emotional suffering, to be compensable, must be substantial and manifested by objective symptomatology." *Id.* at 121. In its decision, the Supreme Judicial Court of Maine noted that the reasoning in *Spade v. Lynn & Boston Railroad*, 172 Mass. 488, 52 N.E. 747 (1899), noted by the majority in this case, has been the object of much critical comment in legal periodicals and cases and has been rejected by the New Hampshire court.

During the same year, the Supreme Court of Hawaii was presented the case of *Rodrigues v. State*, 52 Hawaii 156, 472 P.2d 509 (1970). In the *Rodrigues* case the plaintiffs' home was flooded during a rainstorm because the state highway workers negligently blocked a drain culvert. The plaintiffs were not present at the time of the flooding so they suffered no impact or physical injury. The court noted: "The traditional rule, based upon considerations of policy we discuss herein, is that there is no recovery for the negligent infliction of mental distress alone." *Id.* at 169.

The Supreme Court of Hawaii then rejected that notion and upheld the award for the mental anguish, absent physical injury. The primary consideration, said the Hawaii court, should be to assure the genuineness of such claims. The court then adopted standards to guarantee genuineness as well as require that the mental anguish is indeed serious. With those requirements present, the court then declared that normal tort principles are to be applied to determine the right of recovery.

The State of Washington, likewise, appears to have aligned itself with those courts which now recognize what I believe to be the more realistic approach to mental distress. In *Hunsley v. Giard*, 87 Wash. 2d 424, 435, 553 P.2d 1096, 1102-03 (1976), the Washington court held: "Balancing those interests and subject to the limitations hereinafter set forth, we conclude that the plaintiff who suffers mental distress has a cause of action; that is to say, the defendant has a duty to avoid the negligent infliction of mental distress. It is not necessary that there be any physical impact or the threat of an immediate physical invasion of the plaintiff's personal security." See, also, *Corrigal v. Ball & Dodd Funeral Home*, 89 Wash. 2d 959, 577 P.2d 580 (1978).

In 1980 the California Supreme Court adopted the more modern view in the case of *Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916, 616 P.2d 813, 167 Cal. Rptr. 831 (1980). The *Molien* case involved the question of whether the plaintiff husband could recover for the mental distress he suffered as a result of the defendants' negligent and incorrect diagnosis that his wife had syphilis. The California court reversed the trial court's sustaining of the defendants' demurrers and ordered the case to trial. In so doing it created an independent cause of action in California, saying: "In our view of the attempted distinction between physical and psychological injury [it] merely clouds the issue. The essential question is one of

proof; whether the plaintiff has suffered a serious and compensable injury should not turn on this artificial and often arbitrary classification scheme. We thus agree with the view of the *Rodrigues* court: 'In cases other than where proof of mental distress is of a medically significant nature, [citations] the general standard of proof required to support a claim of mental distress is some guarantee of genuineness in the circumstances of the case. [Citation.]' (472 P.2d at p. 520.) This standard is not as difficult to apply as it may seem in the abstract. . . . [T]he jurors are best situated to determine whether and to what extent the defendant's conduct caused emotional distress, by referring to their own experience." *Id.* at ___, 616 P.2d at 821, 167 Cal. Rptr. at 839.

And finally we find, on March 25, 1981, the Supreme Court of South Carolina deciding the case of *Ford v. Hutson*, 49 U.S.L.W. 2663. In permitting recovery for mental and emotional injury, absent physical injury, the South Carolina court noted that numerous jurisdictions today have recognized that infliction of mental suffering is in fact a cause of action in itself. This new tort is commonly denominated, appropriately, "infliction of emotional distress" or "outrage." In upholding the cause of action, the South Carolina court noted that it had earlier permitted a plaintiff to sue upon a claim in which she alleged she suffered a nervous breakdown after defendant had used vile, profane, and abusive language.

One need not think very long on the matter before one recognizes and concludes that an emotional injury is as serious as, and often more serious than, a physical injury. The damages caused by emotional injuries oftentimes take much longer to heal than a physical injury would.

Cases are legion supporting a cause of action for situations where one becomes ill by reason of finding a foreign object in food, even though the foreign

object is not consumed and does not cause illness. See, *Opelika Coca-Cola Bottling Company v. Johnson*, 46 Ala. App. 298, 241 So. 2d 327 (1970); *Jasper Coca-Cola Bottling Company v. Roberts*, 47 Ala. App. 219, 252 So. 2d 428 (1971); *Way v. Tampa Coca Cola Bottling Company*, 260 So. 2d 288 (Fla. App. 1972); *Paul v. Hardware Mut. Ins. Co.*, 254 So. 2d 690 (La. App. 1971); *Coca-Cola Bottling Co. of Plainview v. White*, 545 S.W.2d 279 (Tex. Civ. App. 1976); *Miller v. Atlantic Bottling Corp.*, 259 S.C. 278, 191 S.E.2d 518 (1972); *Shoshone Coca-Cola v. Dolinski*, 82 Nev. 439, 420 P.2d 855 (1966).

In all of the above-cited cases, and they are but an example of the many that can be found, recovery was permitted because an individual became ill at the thought of the contamination being in the food or drink. One who is so affected by the thought process is mentally injured. It is that clear. To therefore require that, before one who is mentally injured may recover, he must at least regurgitate once seems to me to be imposing upon the law a requirement that makes little or no sense. As I indicated at the outset, I would join with those jurisdictions which have adopted what I perceive to be the more modern view and would permit a cause of action to exist for mental anguish, absent bodily harm or other compensable damage.

Setting aside for the moment my view that one should be permitted to recover for mental anguish, absent bodily harm or other compensable damages, I do not believe that we need reach that issue in this case. An examination of the cases decided by this court on previous occasions should lead one to the conclusion that summary judgment was not appropriate in this case, and the granting of that summary judgment by the trial court should be reversed.

To properly understand what has in fact taken place, one must note all of the evidence presented in opposition to the motion for summary judgment, in-

cluding the deposition of Mrs. Fournell and her treating psychiatrist.

The record presented to us on the motion for summary judgment discloses that in January of 1978 marital difficulties existing between Mr. and Mrs. Fournell resulted in their obtaining a decree of divorce. This was then set aside in February of 1978 when they reconciled. Part of the reconciliation process was the purchase of a new home located at 3772 Everett Street in the city of Lincoln, Nebraska, the previous home having been sold in connection with the divorce. The Fournells borrowed $35,000 for the purchase of the house, though between them they had a total monthly income of only $1,200.

As noted by the majority, in May or June of 1978 Mrs. Fournell discovered extensive termite damage in the flooring even though a termite inspection had been performed by the defendant. The cost of repair was in excess of $15,000. The Fournells did not have that money and had to borrow the $15,000 in addition to the $35,000 they had already borrowed for the house in the first instance. Only one contractor was even willing to bid on the repair project, and it was necessary to discharge him when it appeared he was unable to do the job adequately for the bid price. Mr. Fournell wound up making the repairs himself by working weekends and after his job. The $15,000, however, proved to be inadequate for the materials necessary to repair the damage and the Fournells were unable to complete the repairs. Left uncompleted at their home were the repairs to the garage, additional insulation, and certain drywall work.

The record further discloses that beginning in July of 1978, as the repair was underway, the contractor was not doing what he was hired to do and the family was having unusual strain put upon it by reason of all these difficulties. Mrs. Fournell found it necessary to consult Dr. Glen Lau. At the time she was constantly

crying, could not sleep, was shaking, and, in general, was depressed. Things got worse, and on July 19, 1978, Mrs. Fournell was hospitalized by Dr. Whitla, a psychiatrist. The hospitalization covered the period from July 19, 1978, to August 6, 1978. Mrs. Fournell was next hospitalized on September 13, 1978, and remained in the hospital until September 21, 1978. On October 10, 1978, she was again hospitalized when she took an overdose of Thorazine in an attempt to commit suicide. She was discharged on October 18, 1978, when, according to Dr. Whitla, she was still depressed but no longer actively suicidal. She remains, according to the record, under medical care.

By reason of her mental and physical condition, she was unable to maintain active employment. As a result, the Fournells and their two children were trying to live on $300 per month after their $500-per-month house and construction loans were paid.

The deposition of Dr. Whitla establishes that Mrs. Fournell had suffered a "psychic injury" as a result of discovering the termites. He defined a "psychic injury" as basically reactive depression demonstrated by physiological consequences. By definition, physiological consequences must relate to some injury to the body. The evidence as presented to us at this point on the motion for summary judgment, then, is to the effect that, as a result of the negligence of the defendant, Mrs. Fournell suffered a mental breakdown, evidenced by shaking, crying, depression, inability to sleep, and an attempt to commit suicide. That does not significantly differ from those cases in which we have heretofore permitted recovery.

In the case of *Hanford v. Omaha & C.B. Street R. Co.*, 113 Neb. 423, 203 N.W. 643 (1925), we held that where a woman standing at a street intersection within a few feet of the track upon which two streetcars collided was greatly frightened thereby, and

jumped back and immediately felt sick and 3 days later suffered a miscarriage, the reasonableness of her fright and subsequent conduct were questions for the jury. We further held in *Hanford* that where a pregnant woman is placed in a position of reasonably apprehended peril by the negligence of one owing her a legal duty, and suffers a miscarriage as a proximate result of shock and fright produced by such negligence, she may recover damages from the wrongdoer. *Hanford* did not require any immediate physical injury but only that any ultimate physical injury be proximately caused by the mental injury occasioned by the negligence of the defendant.

In *LaSalle Extension University v. Fogarty*, 126 Neb. 457, 253 N.W. 424 (1934), we specifically held that threats to sue and to appeal to one's employer, made willfully and intentionally, for the purpose of producing mental pain and anguish in attempting to collect a debt, authorizes recovery for mental pain and suffering though no physical injury results. Admittedly, the *LaSalle Extension University* case involved an intentional tort, but the concern about the reliability of proof of the injury is no less or different whether committed by an intentional act or by a negligent act.

In *Rasmussen v. Benson*, 133 Neb. 449, 275 N.W. 674 (1937), *on rehearing* 135 Neb. 232, 280 N.W. 890 (1938), noted by the majority, we permitted recovery to a dairy farmer who bought a sack of bran at a farm sale and later discovered that the bran contained lethal levels of arsenic which destroyed his dairy herd and ruined his business. Plaintiff suffered great mental anguish as a result of the loss and his concern about whether others might have consumed the poisonous milk. Within a year he suffered a heart attack and died. Again, there was no immediate physical injury. The majority suggests that *Rasmussen* was an intentional tort case or at least reckless and wanton behavior. The case, however,

was tried on a traditional theory of negligence.

I find it difficult to rationally distinguish why a mental injury which ultimately results in a breakdown of one's arterial system is compensable but a mental injury resulting in an ultimate breakdown of one's nervous system is not. This court at least implied that such distinction should not exist when, in the earlier *Rasmussen* case, it said at 458, 275 N.W. at 679: "A mental shock or disturbance sometimes causes injury or illness to the body, especially to the nervous system. Now, if the shock or fright was a natural consequence of what was brought about by the circumstances of the loss of Rasmussen's business, — the death of his live stock, — then such nervous shock was the proximate cause of Rasmussen's physical and mental condition that led to his death." And on rehearing in *Rasmussen*, we said: "Damages for actual injury resulting from fright and shock are recoverable, although not accompanied by a contemporaneous injury." (Syllabus of the court.) Yet we are now saying as a matter of law that crying, shaking, withdrawing, experiencing depression, and attempting to commit suicide are not sufficiently physical in nature to constitute subsequent physical injury entitling one to recover if believed by a jury.

I am unable to determine how we can find, as a matter of law, that Mrs. Fournell has not suffered bodily harm sufficient to bring her within the Restatement rule announced by the majority and thereby entitle her to a trial on the merits.

For that reason, I believe that the majority is in error and I must dissent.

I make but brief comment on the majority's second point to the effect that "under the circumstances here, conduct involving the failure of the defendant to discover termite damage to plaintiffs' house did not create an unreasonable risk of causing bodily harm *as a matter of law*." I gather that it is the position of the majority of the court that an owner of

real estate may not be so distressed by serious damage to his or her property which cannot be easily repaired that the owner may suffer serious mental distress. And it appears that the majority also believes, as a matter of law, that one in the termite business should not recognize that an owner of property may be seriously affected emotionally by the failure to find termites in the property before a purchase. The basis for the business itself appears, as advanced by the exterminators, to be to permit one to be at rest, knowing that termites are not at work while owners are at sleep. The majority may declare that such cannot happen, but both the facts of this case and the realities of life dispute that conclusion. It is no accident that one's home is considered one's castle. I am at a loss to understand how we may conclude, as we have here, that "under the circumstances" (as a matter of fact) there was not an unreasonable risk "as a matter of law," but at the same time acknowledge that there is or may be an unreasonable risk of causing bodily harm if two trolley cars come together in the presence of a pregnant woman or a dairy farmer feeds his cattle contaminated bran.

Whether we choose to adopt the more modern view concerning the right to recover for mental injury or simply acknowledge that Mrs. Fournell has indeed suffered a bodily injury from an emotional disturbance, the granting of a summary judgment in this case is in error. I would have reversed and remanded for further proceedings.

WHITE, J., joins in this dissent.