**John L. WILSON and Roberta L. Wilson, Husband and Wife, Appellants,**

v.

**SEARS, ROEBUCK AND CO., a New York Corporation, Appellee.**

No. 84–1314.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1984.

Decided March 20, 1985.

Tim J. Kielty and William E. Gast, Omaha, Neb., for appellants.

Mark L. Laughlin, Omaha, Neb., for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The firing of a shotgun into the crowd at a supper club where John and Roberta Wilson were dining gives rise to this diversity action. Although they were not struck by the blasts, the Wilsons saw one member of their party killed and another suffer serious injury. Alleging that this incident caused them to suffer post-traumatic stress disorder, they sued Sears, Roebuck and Co., claiming that it was negligent in selling the gun to the mental patient who fired it in the Club. The district court [1] set aside the verdicts awarding the Wilsons $85,000 and entered judgment notwithstanding the verdict because the Wilsons had not sustained physical injuries susceptible of objective determination. The Wilsons appeal, arguing that the court improperly interpreted Nebraska law. We affirm the judgment of the district court.

On November 26, 1977, John and Roberta Wilson accompanied some friends to the Club 89 restaurant in Omaha. As they waited for a show to begin, Ulysses Cribbs, who had been treated in the Veterans Administration Hospital and diagnosed as a paranoid schizophrenic, began randomly firing at the patrons with a shotgun. John Wilson felt a very hot sensation go by the right side of his face. Roberta Wilson felt something fly into the side of her face and her hand, causing a stinging sensation. John, a police officer, yelled at his wife to give him his gun that she was carrying in her purse. He attempted to fire at Cribbs, but his gun malfunctioned. A companion of the Wilsons', Dennis Lipari, was shot in the face and died later, and Mrs. Lipari was seriously wounded. John began crying and became hysterical. John and Roberta were taken to the hospital, where they were given injections to calm them and released.

Around a week after the incident, John Wilson went to St. Louis for police training. His training officers stated that after his return he became quiet, withdrawn, preoccupied, and "was a different person." Upon returning to Omaha, Wilson was very quiet, withdrawn, and no longer displayed affection. Friends described him as "nervous," "going into a shell," and becoming "completely changed."

Wilson found himself more afraid of guns, violence and dying. While on patrol he would become frightened, breaking into a cold sweat with palpitations. He felt that he could no longer perform his duties and resigned his position as a deputy sheriff. He claims to have suffered from nightmares, frequent headaches, dizziness, depression, nervousness, weight loss, and poor appetite.

In September 1979, the Wilsons were evaluated for purposes of this litigation. John was examined by a psychiatrist and a clinical psychologist and was found to suffer from a disorder described as "post-traumatic stress disorder, chronic type." *See*

---

[1]. The Honorable C. Arlen Beam, United States District Judge for the District of Nebraska.

*generally* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 236–39 (3d ed. 1980). This manual describes the disorder as "the development of characteristic symptoms following a psychologically traumatic event that is generally outside the range of usual human experience." *Id.* at 236. A psychiatrist testified that the condition was directly attributable to the shooting incident. Four years after the shooting, John was treated by an internist and another psychiatrist for severe anxiety, severe depression, chest pains, hypertension, and a hernia. A psychiatrist testified that as a result of the traumatic experience, John Wilson became impaired in his job performance, social performance, and overall ability to function. He is required to take medication to assist him in sleeping and to control dizzy spells, blood pressure, and nervousness. Roberta was diagnosed to have suffered from a mild case of acute post-traumatic stress disorder. She claimed to have lost the affection of her husband as a result of the incident.

The Wilsons filed suit against Sears alleging that it had negligently sold the shotgun to Cribbs. After verdicts for the plaintiffs ($75,000 for John, $10,000 for Roberta), the court granted a motion for a judgment notwithstanding the verdict:

> Damages for negligent infliction of emotional distress are only recoverable when such distress results in physical injury manifested by objective symptomatology. *Fournell v. Usher Pest Control,* 208 Neb. 684, 305 N.W.2d 605 (1981); *Owens v. Childrens Memorial Hospital,* 347 F.Supp. 663 (D.Neb.1972); *see also Restatement (Second) of Torts* § 436A [1965]. While the Court will concede that the plaintiffs suffered severe emotional disturbance while present at or as an immediate result of the Club 89 shooting, we find that their injuries are not of the type susceptible of objective determination.
>
> Plaintiffs were diagnosed as suffering from post-traumatic stress disorder. Plaintiffs assert that they suffer from a panoply of anxiety-related ailments, in-

cluding generalized pain, an inability to concentrate, hyperalertness, diminished sensitivity and intermittent sleeplessness. The only particular ailment relating to a specific portion of the body was John Wilson's chest pains. These pains were first exhibited several years after the shooting. Although one of the physicians testifying at trial attributed these pains to "anxiety," there is simply no evidence that adequately links this episode with the post-traumatic stress disorder. In any event, the plaintiffs stated repeatedly that they did not consider the chest pain to be an important factor. They concede that a symptom (chest pain) arising out of another symptom (anxiety) arising out of a traumatic event (the Club 89 occurrences) is not a condition that supports a recovery.

> Plaintiffs contend that their relevant symptoms are those of a person suffering from post-traumatic stress disorder, as shown by an authoritative publication, the Diagnostic Statistical Manual (DSM) III. They further contend that observation of these anxiety related symptoms by physicians and others provides the objective symptomatology necessary for a recovery of damages. However, the fact that attending physicians and friends hear about and observe an emotional state of mind does not transform such complaints and observations into objective findings of physical injury. The Court finds that, of all the symptoms recited, only the chest pains are susceptible to objective verification. Accordingly, under the facts of this case, the traumatic stress disorder and its various manifestations are not compensable.

*Wilson v. Sears, Roebuck & Co.,* No. CV–80–0–117, slip. op. at 2–4 (D.Neb. Feb. 6, 1984). On appeal, the Wilsons urge that Nebraska law and the evidence presented at trial support a reinstatement of the verdicts.

**I.**

**A.**

█ The district court order concluded that the Wilsons' injuries were not compen-

sable as a matter of Nebraska law because there was no physical injury manifested by objective symptoms. This decision concerning local law in a diversity action is given great weight on appeal. *O'Brien v. Heggen,* 705 F.2d 1001, 1005 (8th Cir.1983); *Bergstrom v. Sambo's Restaurant, Inc.,* 687 F.2d 1250, 1255 (8th Cir.1982). In reviewing the order, we look first to *Fournell v. Usher Pest Control,* 208 Neb. 684, 305 N.W.2d 605 (1981), as it is the latest decision from the Nebraska Supreme Court concerning damages for mental distress.

In *Fournell,* the defendant treated Mrs. Fournell's home for termites. Several months later, she discovered extensive termite damage to the house. One to two months subsequent, she visited a doctor because she cried constantly, was deeply depressed, and could not sleep. She was hospitalized for "reactive depression," and there was evidence "that her mental and emotional disturbance was caused by the discovery of the termite infestation." 208 Neb. at 686, 305 N.W.2d at 606. The trial court found two elements necessary to recovery: proof that the plaintiff suffered physical injury from emotional trauma, and evidence that the defendant's negligence had placed her in fear of peril for her own safety. The court granted summary judgment for the defendant.

On appeal, the supreme court established two requirements for recovering damages caused by negligently inflicted emotional distress. The plaintiff must have been in the zone of danger created by the defendant's conduct and have suffered "some type of physical injury." 208 Neb. at 687, 305 N.W.2d at 607. The court quoted *Restatement (Second) of Torts* § 436 (1965), which precludes recovery for "emotional disturbance alone, without bodily harm or other compensable damage." It concluded: "[W]hen the termite damage was discovered by the plaintiffs no physical injury resulted to anyone, nor was Susan Fournell placed in fear of bodily harm to herself or anyone else. The plaintiffs' claim for damages here rests on mental and emotional disturbance and distress alone." *Id.* at 687–88, 305 N.W.2d at 607. Alternatively, the court held that as a matter of law the defendant's failure to discover the damage did not place the plaintiffs in a zone of danger. *Id.* at 688, 305 N.W.2d at 607.

The Wilsons urge that the *Fournell* court did not reach the "physical injury" issue and distinguish the case on the ground that Mrs. Fournell was never in physical peril, in contrast to the Wilsons' position in the range of shotgun blasts. The judges dissenting in *Fournell,* however, read the majority opinion to conclude as a matter of law that "crying, shaking, withdrawing, experiencing depression, and attempting to commit suicide are not sufficiently physical in nature to constitute subsequent physical injury entitling one to recover if believed by a jury." 208 Neb. at 701, 305 N.W.2d at 613 (Krivosha, C.J., dissenting). Whether or not the majority's statements regarding the injury issue were an alternate holding or merely dicta, they provided a basis for the district court to conclude that the state's highest court requires physical injury and that emotional disturbance and distress alone are not sufficient to establish a right to recover. Our function in this diversity cases is to determine whether the district court erred in its determination of a state law question. While we entertain the view that the dissenting opinion of *Fournell* is far more persuasive than the majority opinion, it is our duty, as well as the district court's, to follow the court's decision, which is that of a majority of its judges.

Viewing the evidence in a light most favorable to the Wilsons, *see Lackawanna Leather Co. v. Martin & Stewart, Ltd.,* 730 F.2d 1197, 1200 (8th Cir.1984), the primary "physical injury" demonstrated is John Wilson's chest pains. Wilson's doctor testified that the pains were caused by a hernia and stated the cause of the hernia was unknown. Similarly, the doctor did not link John's hypertension to the shooting incident, for its cause was also unknown. Thus, the district court did not err in ruling that the Wilson's had failed to

prove that they sustained physical injury as defined in *Fournell*.[2]

## B.

The Wilsons argue that they should recover because their proof established that the post-traumatic stress disorder is "susceptible of objective determination." Dr. Swanson and Dr. Sletten, psychiatrists, and Dr. Wood, a clinical psychologist, all described the pattern of symptoms of the Wilsons. Dr. Swanson testified that this post-traumatic stress disorder was susceptible of objective determination and his views were mirrored by the others. The district court rejected the Wilson's argument that their mental and emotional disorders provided the objective symptomatology necessary for recovery. It concluded that such evidence of an emotional state did not transform the complaints and observations "into objective findings of physical injury." The Wilsons argue, however, that this evidence made a submissible case under *Owens v. Childrens Memorial Hospital*, 347 F.Supp. 663 (D.Neb.1972), *aff'd*, 480 F.2d 465 (8th Cir.1973).

*Owens* was a diversity action brought by a couple alleging that negligent medical treatment by the defendants resulted in the death of their child, causing them permanent "physical and mental anguish, great emotional disturbance, shock, and injury to their nervous systems." 347 F.Supp. at 664. The court held that the plaintiffs could not recover under Nebraska law because they had not been in peril. *Id.* at 669. The physical injury issue was never decided. The court observed: "whether the plaintiffs have sustained a definite nervous disorder or pure isolated mental anguish has not yet been proved to this Court." *Id.* at 667. It resolved the impact issue after "assuming that plaintiffs [could] prove that a sufficient physical injury has resulted." *Id.*

In dicta, the *Owens* court observed that "even though Nebraska has abrogated the impact rule, there is still a requirement that some type of 'physical injury' result from the negligently inflicted emotional suffering." *Id.* at 666. Endeavoring to define "physical injury," the court surveyed the law in other jurisdictions:

> The term "physical" is not used in its ordinary sense for purposes of applying the "physical consequences" rule. Rather, the word is used to indicate that the condition or illness for which recovery is sought must be one *susceptible of objective determination*. Hence, a definite nervous disorder is a "physical injury" sufficient to support an action for damages for negligence.

*Id.* at 667 (emphasis added) (quoting *Petition of United States*, 418 F.2d 264, 269 (1st Cir.1969) (citations omitted)).[3] No Nebraska law was cited in *Owens* to support *Petition's* discussion of physical injury.

*Fournell* later cited *Owens* only as recognizing Nebraska law that "there was still a requirement that some type of physical injury result from the negligently inflicted suffering." 208 Neb. at 687, 305 N.W.2d at 607. *Fournell* did not refer to the language from *Owens* discussing the physical injury definition in *Petition*. Moreover, the dissent in *Fournell* also fails to mention *Owens* and its discussion of physical injury. The Wilsons' argument,

---

**2.** In *Netusil v. Novak*, 122 Neb. 749, 241 N.W. 531 (1932), the court noted that there is "liability for damages for physical injuries which are proximately caused by fright and terror produced by one who owes a legal duty to the one injured." *Id.* at 749, 241 N.W. at 531. The defendant's dog snarled at the plaintiff, but did not bite her. She fainted, and as a "result of the shock received from this attack," suffered from "nervous prostration." After a verdict for the plaintiff, the trial court entered judgment for the defendants because the dog had not bitten the plaintiff. The Supreme Court reversed. The *Novak* court did not squarely address whether "nervous prostration" was a physical injury, but simply assumed that it was. Thus, the case does not support the Wilsons' claims of physical injury.

**3.** *Petition* was an admiralty claim arising from a seaman's psychoneurosis due to immersion in frigid waters after his ship had capsized. The grounding of the vessel was held to be an impact sufficient to satisfy the test applied by jurisdictions following the impact rule. 418 F.2d at 268.

both to the district court and before us, does not attempt to establish that the evidence proved physical injury, but simply that the evidence of mental and emotional distress was sufficiently objective to recover under *Owens.* As we read *Owens* and *Fournell,* we cannot conclude that the district court erred in requiring proof of physical injury and finding that the evidence had not established such injury.

■ The district court's instruction,[4] based upon *Owens* reference to *Petition,* may well be contrary to the decision granting judgment notwithstanding the verdict. Nevertheless, we are satisfied that the *Petition* language from *Owens* does not have support in Nebraska law. If there was no submissible issue for jury consideration, a prior inconsistent jury instruction does not prevent the court from correctly ruling the submissibility issue after the verdict. *See Coca Cola Bottling Co. v. Hubbard,* 203 F.2d 859, 862 (8th Cir.1953) ("[I]n determining whether a trial court has erred in denying a motion for a directed verdict made at the close of the evidence, it is the applicable law which is controlling, and not what the trial court announced the law to be in his instructions."), *quoted in Hanson v. Ford Motor Co.,* 278 F.2d 586, 593 (8th Cir.1960) (Blackmun, J.). The district court did not err in concluding that *Fournell* disallows recovery for mental and emotional disturbances and stress alone and that this was the extent of injuries that the Wilsons had proven. The judgment of the district court is affirmed.

---

4. [T]o be entitled to damages resulting from an emotional disturbance, the plaintiffs must prove by a preponderance of the evidence that they suffered from some type of physical injury resulting from such emotional disturbance and that said physical injury was a proximate result of defendant's negligence. A physical injury is a condition of illness which is susceptible of objective determination.