CHRISTOPHER S. HAMILTON, APPELLANT, V. WAYNE NESTOR, PERSONAL REPRESENTATIVE OF THE ESTATE OF DIANN K. NESTOR, DECEASED, APPELLEE.

659 N.W.2d 321

Filed April 18, 2003.   No. S-02-356.

John M. Lefler for appellant.

James M. Bausch, Tracy A. Oldemeyer, and Pamela K. Epp, of Cline, Williams, Wright, Johnson & Oldfather, P.C., for appellee.

CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In this action arising from a motor vehicle accident, the district court for Gage County held as a matter of law that Christopher S. Hamilton could not recover on his negligence claim. The court reasoned that Hamilton suffered no physical injury in the accident and therefore could not recover damages for his emotional distress caused by the accident. Hamilton appeals from a denial of his motion for new trial.

## FACTS

In Hamilton's operative amended petition filed against Wayne Nestor, the personal representative of the estate of DiAnn K. Nestor (Nestor), Hamilton alleged that on October 21, 1997, he was involved in a motor vehicle collision caused by Nestor's negligence. Both Nestor and her daughter Laura, who was a passenger in her vehicle, sustained fatal injuries. Hamilton alleged that as a proximate result of Nestor's negligence, he suffered "mental and psychological injuries, including posttraumatic stress disorder." He prayed for both general and special damages.

The personal representative moved for summary judgment. At a hearing on the motion, the personal representative offered portions of Hamilton's deposition in which he admitted that he banged his knees on the dashboard during the accident but otherwise suffered no physical injuries. In other portions of the deposition, Hamilton described recurrent nightmares in which he comes upon accident scenes and finds that he or his family members are the victims. These nightmares occur five to six times a week when he is not on medication and one to two times a week when he is medicated. Hamilton also described "flashbacks" that usually occur when he is driving, in which he sees all or part of the accident. Hamilton is generally fearful that he will be involved in another accident and feels guilty that he was unable to prevent the deaths of two people. He testified that he once blacked out while driving near the intersection where the accident occurred. Also received in evidence was the deposition testimony of Dr. Y. Scott Moore. Moore testified that Hamilton suffered posttraumatic stress disorder as a result of the accident.

The district court granted the personal representative's motion for summary judgment on January 10, 2002. In its order, the court

found that Hamilton did not suffer any physical injury in the accident. Relying on *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 580 N.W.2d 86 (1998), and *Baylor v. Tyrrell*, 177 Neb. 812, 131 N.W.2d 393 (1964), *disapproved on other grounds, Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994), the court determined that Nebraska law allows recovery for mental suffering and anxiety only in negligence actions in which a physical injury has been sustained. The court further noted that although Nebraska allows a cause of action for negligent infliction of emotional distress, "[t]his action is not one for negligent infliction of emotional distress, but rather [one that] alleges mental or emotional damages as a result of automobile negligence."

Hamilton filed a motion for new trial in which he alleged that the trial court erred in granting the motion for summary judgment. Alternatively, Hamilton alleged that the trial court erred in failing to allow the case to proceed on the theory of negligent infliction of emotional distress or to grant Hamilton leave to amend his petition to specifically allege that theory. In an order overruling the motion, the district court held that Hamilton could not recover on a negligence cause of action because his mental suffering did not arise out of a physical injury and that he could not proceed on a negligent infliction of emotional distress theory as a matter of law because he had no marital or familial relationship with Nestor. Hamilton filed this timely appeal, and we granted his petition to bypass the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Hamilton assigns, restated and summarized, that the district court erred in (1) sustaining Nestor's motion for summary judgment on the basis that posttraumatic stress disorder is not compensable under a general motor vehicle negligence claim and (2) denying his motion for new trial, thereby precluding him from proceeding on an alternate claim for negligent infliction of emotional distress.

## STANDARD OF REVIEW

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an

abuse of that discretion. *Bradley T. & Donna T. v. Central Catholic High Sch.*, 264 Neb. 951, 653 N.W.2d 813 (2002); *Bowley v. W.S.A., Inc.*, 264 Neb. 6, 645 N.W.2d 512 (2002).

■ Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2002); *Soukop v. ConAgra, Inc.*, 264 Neb. 1015, 653 N.W.2d 655 (2002); *Governor's Policy Research Office v. KN Energy*, 264 Neb. 924, 652 N.W.2d 865 (2002). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *R.W. v. Schrein*, 264 Neb. 818, 652 N.W.2d 574 (2002); *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 647 N.W.2d 85 (2002).

## ANALYSIS

### CHARACTERIZATION OF THIS ACTION

■ We disagree with the district court's characterization of this action as "not one for negligent infliction of emotional distress, but rather [one that] alleges mental or emotional damages as a result of automobile negligence." We have stated that an "emotional distress claim is not a cause of action, but, rather, a separate theory of recovery or element of damage." *Fackler v. Genetzky*, 257 Neb. 130, 139, 595 N.W.2d 884, 891 (1999). This is a civil action for damages based upon allegations of negligent operation of a motor vehicle on a public highway. Hamilton makes no claim that the physical structure of his body was injured in the accident, and he therefore seeks no damages for mental pain and suffering related to a physical injury. Nor is this a case involving a claim for parasitic damages, which are damages occasioned by anxiety specifically due to a reasonable fear of future harm attributable to a physical injury caused by the negligence of another. See *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 580 N.W.2d 86 (1998). Rather, the injury claimed by Hamilton can be fairly described as "mental or emotional harm (such as fright or anxiety) that is caused by the negligence of

another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." See *Consolidated Rail Corporation v. Gottshall*, 512 U.S. 532, 544, 114 S. Ct. 2396, 129 L. Ed. 2d 427 (1994). This is the only injury for which Hamilton claims damages in this action. Thus, while it is true that the negligence alleged in this case involved the operation of a motor vehicle, the injury which is claimed to have resulted from such negligence is purely an emotional one. This, then, is an action for negligent infliction of emotional distress.

In *Consolidated Rail Corporation v. Gottshall, supra*, the U.S. Supreme Court was presented with the issue of whether a purely emotional injury was compensable under the Federal Employers' Liability Act, which permits railroad employees to recover for work injuries caused by an employer's negligence. See 45 U.S.C. § 51 (2000). In addressing this issue, the Court acknowledged that while nearly all states have recognized a right to recover for negligent infliction of emotional distress, as defined by the Court in the passage quoted above, the "fundamental differences between emotional and physical injuries" has led to practical limitations upon the common-law right of recovery for reasons of public policy. *Consolidated Rail Corporation v. Gottshall*, 512 U.S. at 545. For example, the Court noted that

> "[b]ecause the etiology of emotional disturbance is usually not as readily apparent as that of a broken bone following an automobile accident, courts have been concerned . . . that recognition of a cause of action for [emotional] injury when not related to any physical trauma may inundate judicial resources with a flood of relatively trivial claims, many of which may be imagined or falsified, and that liability may be imposed for highly remote consequences of a negligent act."

512 U.S. at 545, quoting *Maloney v. Conroy*, 208 Conn. 392, 545 A.2d 1059 (1988). Other policy considerations noted by the Court as influencing limitations upon the right to recover damages for emotional distress include the absence, in comparison to physical injury, of "necessary finite limits on the number of persons who might suffer emotional injury as a result of a given negligent act," and the difficulty of predicting the incidence and severity of emotional injuries which "depend on psychological

factors that ordinarily are not apparent to potential tortfeasors." *Consolidated Rail Corporation v. Gottshall*, 512 U.S. at 545-46. The Court concluded:

> For all of these reasons, courts have realized that recognition of a cause of action for negligent infliction of emotional distress holds out the very real possibility of nearly infinite and unpredictable liability for defendants. *Courts therefore have placed substantial limitations on the class of plaintiffs that may recover for emotional injuries and on the injuries that may be compensable.*

(Emphasis supplied.) 512 U.S. at 546.

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IN NEBRASKA

This court addressed the relationship between emotional injury and physical injury in *Hanford v. Omaha & C. B. Street R. Co.*, 113 Neb. 423, 203 N.W. 643 (1925). In that case, a pregnant woman was approaching a streetcar she intended to board when a second streetcar crashed into the first. Although the woman suffered no direct physical injury from this collision, it caused her to jump backward and she suffered a strain, causing her to become ill and suffer a miscarriage. The jury returned an award in her favor. On appeal, the defendant argued that the jury should have been instructed that if the miscarriage was caused by the woman's jumping backward, then the defendant was liable, but if it was caused by fright alone, then the defendant was not liable. After an extensive examination of case law from other jurisdictions, we held that "if defendant's negligence was the proximate cause of fright, and fright, in natural and probable sequence, the proximate cause of physical injury, the chain of causation is complete, and the fright is not an independent cause." *Id.* at 439, 203 N.W. at 649-50. We thus concluded that the woman was entitled to recover whether her injuries resulted from the jump backward or solely from the fright.

We considered analogous circumstances in *Netusil v. Novak*, 120 Neb. 751, 235 N.W. 335 (1931). There, the plaintiff was walking along a street when the defendant's growling dog approached her in a crouched position with teeth bared, causing her to faint. As a result, she suffered "nervous prostration." *Id.* at 755, 235

N.W. at 337. Citing *Hanford,* we noted that there can be liability for physical injuries which are proximately caused by fright and terror. We concluded that the defendant was liable to the plaintiff for her injuries.

*Rasmussen v. Benson,* 135 Neb. 232, 280 N.W. 890 (1938), involved a dairy farmer who bought a sack of unlabeled "bran" at a farm sale and fed it to his cows and other livestock. The next morning, after he had milked the cows and delivered the milk to his customers, the cows became very sick. Upon discovering this, the farmer notified all of his customers. The "bran" was subsequently found to contain arsenic. Most of the farmer's livestock later died, and he lost the dairy business he had built up over a 10-year period. As a result of the nervous shock caused by the poisoning of his livestock, the loss of his business, and the fear of communicating the poison to his customers, the farmer became fatally ill and died. According to the medical testimony, he died of a "decompensated heart caused by an excessive emotional disturbance." *Id.* at 233, 280 N.W. at 890. In finding that the seller of the poisoned bran was liable for the farmer's death, we cited *Hanford* for the proposition that a physical injury resulting from an emotional upset produced by the negligence of another creates liability for damages. We noted that this proposition does not allow recovery for worry alone, unaccompanied by physical injury. We also clearly stated for the first time that recovery for physical injuries resulting from emotional distress is not limited to situations in which the fright was accompanied by physical impact.

In *Fournell v. Usher Pest Control Co.,* 208 Neb. 684, 305 N.W.2d 605 (1981), a young couple with two small children requested a termite inspection of a home they were buying. The defendant's report indicated there was termite activity at one time, but no present damage. Approximately 3 months later, extensive termite damage was discovered, and the wife subsequently sought medical attention because she was constantly crying, could not sleep, and was deeply depressed. She was hospitalized on three occasions and was treated by a psychiatrist for over 3 years. Evidence indicated her mental distress was caused by the discovery of the termite infestation and the resulting damage to her home. This court noted that although we had abrogated

the impact rule, a plaintiff seeking recovery for negligently inflicted emotional distress was still required to show (1) that some type of physical injury resulted from the negligently inflicted suffering and (2) that the plaintiff was within the " 'zone of danger' " or actually feared for his or her own safety. *Id.* at 687, 305 N.W.2d at 607. Finding that the wife had not suffered any physical injury and that she had never been placed in fear of bodily harm to herself or anyone else, we held that her mental distress was not actionable. We distinguished *Rasmussen v. Benson, supra,* on the basis that the farmer suffered actual personal loss and that the seller's act was so wanton and reckless as to approach intentional injury.

A dissent in *Fournell v. Usher Pest Control Co., supra,* argued that the requirement that emotional harm must manifest itself in bodily harm was "outmoded and should be rejected." *Id.* at 690, 305 N.W.2d at 608. The dissent reasoned:

> To suggest that a psychological injury is not as grievous as a physical injury is to ignore reality. And to further suggest that if one can be sufficiently mentally disturbed so as to suffer a coronary occlusion, he or she may recover in tort, but if he or she simply becomes an emotionally distressed person, reduced to sniveling and crying and attempting suicide, he or she may not recover, does not seem to me to be founded upon any rational basis.

*Id.* at 690-91, 305 N.W.2d at 608. The dissent continued:

> To therefore require that, before one who is mentally injured may recover, he must at least regurgitate once seems to me to be imposing upon the law a requirement that makes little or no sense. As I indicated at the outset, I would join with those jurisdictions which have adopted what I perceive to be the more modern view and would permit a cause of action to exist for mental anguish, absent bodily harm or other compensable damage.

*Id.* at 697, 305 N.W.2d at 611.

Four years later, this court decided *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985). In that case, two young siblings were riding their bicycles when a garbage truck negligently backed through a stop sign, killing the girl as her brother helplessly watched. The brother became physically ill and suffered

emotional distress. An action brought by the parents on behalf of their son was dismissed by the trial court based on a finding that the petition failed to meet the requirements of *Fournell v. Usher Pest Control Co.*, 208 Neb. 684, 305 N.W.2d 605 (1981), because it did not allege that the boy was within the " 'zone of danger' " or feared for his own safety. *James v. Lieb*, 221 Neb. at 48, 375 N.W.2d at 111. On appeal, we emphasized that *Fournell* concerned recovery by an alleged " 'direct victim' " of the defendant's negligence, while *James* presented the issue of under what circumstances a bystander could recover for negligent infliction of emotional distress. *James v. Lieb*, 221 Neb. at 49, 375 N.W.2d at 111. We defined " 'bystander[s]' " as "those persons who are not immediately threatened with physical injury nor placed in fear for their own safety by the defendant's negligence." *Id.* In our analysis, we noted that California had abolished the zone-of-danger rule and allowed bystander recovery in *Dillon v. Legg*, 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968). *James v. Lieb, supra.* After examining the implications of *Dillon*, we concluded that "the *Dillon* approach based upon the reasonable foreseeability of the harm [is] a more logical and just method of determining a defendant's liability than the artificial boundaries of recovery drawn by the 'zone of danger' rule." *James v. Lieb*, 221 Neb. at 54, 375 N.W.2d at 114. After so concluding, we adopted the foreseeability approach of *Dillon*, with certain modifications.

First, we held that the relationship between the plaintiff and the victim was the most valuable in determining foreseeability, and thus required that there be a marital or intimate familial relationship between the plaintiff bystander and the victim. We then noted that the plaintiff was not required to experience actual sensory perception of the injury. Finally, we held that the emotional trauma must result from either death or serious injury to the victim.

Finally, but significantly, we addressed the *Fournell* requirement that a plaintiff must present evidence of a physical injury resulting from the emotional trauma. Agreeing with the rationale of the *Fournell* dissent, we rejected the physical injury requirement, noting that "[w]hile physical manifestation of the psychological injury may be highly persuasive, such proof is

not necessary given the current state of medical science and advances in psychology." *James v. Lieb*, 221 Neb. at 58, 375 N.W.2d at 116.

*James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985), clearly adopted a modified version of the *Dillon* test to be applied in bystander cases. Notably, however, *James* specifically overruled *Fournell v. Usher Pest Control Co., supra*, only to the extent that *Fournell* was in conflict with *James*. Because *Fournell* involved a direct victim of the defendant's negligence, while *James* involved a bystander, *James* did not completely abolish the zone-of-danger rule in Nebraska. The zone-of-danger rule is still applicable in direct-victim cases, and the modified *Dillon* rule is applicable in bystander cases. See *Sell v. Mary Lanning Memorial Hosp.*, 243 Neb. 266, 270, 498 N.W.2d 522, 524 (1993) (recognizing that notwithstanding *James v. Lieb, supra*, an action for negligent infliction of emotional distress may still be maintained "by a 'direct victim' of a defendant's negligence"). Clearly, however, *James* did abolish the requirement that the emotional injury must be manifested in physical symptoms in order to be actionable, regardless of whether the claim is asserted by a bystander or by a direct victim of a negligent act.

Our jurisprudence from *Hanford v. Omaha & C. B. Street R. Co.*, 113 Neb. 423, 203 N.W. 643 (1925), through *James v. Lieb, supra*, expanded the class of plaintiffs who may recover for emotional injuries to include both direct victims and certain bystanders, without regard to whether there was a contemporaneous physical injury. However, as our law has evolved since *James*, we have placed specific limitations on the type of emotional injury which may be compensable in a negligence action. In *Turek v. St. Elizabeth Comm. Health Ctr.*, 241 Neb. 467, 488 N.W.2d 567 (1992), the plaintiff claimed that a nurse was negligent in performing medical procedures upon him which were beyond the scope of her licensure. He alleged that as a proximate result of the nurse's negligence, he suffered headaches, sleeplessness, vomiting, and severe emotional distress. In determining whether such damages were recoverable, we adopted the standard used in intentional infliction of emotional distress cases which states that in order for "emotional distress to be compensable, it must be severe." *Id.* at 481, 488 N.W.2d at 576, citing

*Hassing v. Wortman*, 214 Neb. 154, 333 N.W.2d 765 (1983), and *Pick v. Fordyce Co-op Credit Assn.*, 225 Neb. 714, 408 N.W.2d 248 (1987). Under this standard, we held that the plaintiff's claimed emotional injury "was, as a matter of law, not of sufficient severity to warrant compensation." *Turek v. St. Elizabeth Comm. Health Ctr.*, 241 Neb. at 481, 488 N.W.2d at 576.

We refined the test for compensability of negligently inflicted emotional injury in *Schleich v. Archbishop Bergan Mercy Hosp.*, 241 Neb. 765, 491 N.W.2d 307 (1992). The plaintiff in that case was the mother of a patient who died while recovering from surgery at a hospital. Hospital officials notified the coroner that they considered the death suspicious, and as a result, the plaintiff was briefly detained and interviewed by police. She claimed to have suffered emotional distress resulting from the negligence of the hospital in notifying police of the death, and a jury returned a verdict in her favor. Reversing on appeal, we concluded that the evidence did not establish either negligence or compensable injury. With respect to the latter, we wrote that in order to be recoverable, "emotional distress must have been so severe that no reasonable person could have been expected to endure it" and that "the emotional anguish or mental harm must be medically diagnosable and must be of sufficient severity that it is medically significant." *Id.* at 770-71, 491 N.W.2d at 310-11. Because the plaintiff had presented no medical evidence in support of her claim, we held that she failed as a matter of law to prove that she had suffered severe emotional distress. We have continued to apply this two-pronged test in negligence actions where damages are sought for purely emotional injury. See, e.g., *Sell v. Mary Lanning Memorial Hosp.*, 243 Neb. 266, 498 N.W.2d 522 (1993); *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 731, 496 N.W.2d 914 (1993).

## HAMILTON'S CLAIM FOR EMOTIONAL DISTRESS

Applying these principles to the instant case, we conclude that Hamilton falls within the class of plaintiffs who may seek damages for emotional injury caused by the negligence of another. As the operator of one of the vehicles involved in the collision, Hamilton was clearly within the zone of danger. Because he was thus a direct victim of the alleged negligence of the other driver, and not a bystander, his right to recover is not dependent upon

establishing a "marital or intimate familial relationship" with any other victim. See *James v. Lieb*, 221 Neb. 47, 55, 375 N.W.2d 109, 115 (1985).

The remaining issue is whether the specific emotional injury sustained by Hamilton is actionable under the criteria established by our cases. The record includes the expert opinion of Moore, a psychiatrist, that Hamilton suffers from posttraumatic stress disorder as a result of the 1997 accident. Moore testified that Hamilton exhibits symptoms of this disorder, including dreams and flashbacks, which warrant treatment. Moore referred to these symptoms as "clinically significant distress." This evidence is sufficient to meet the requirement that the emotional anguish or mental harm for which recovery is sought must be medically diagnosable and must be of sufficient severity that it is medically significant. See, *Sell v. Mary Lanning Memorial Hosp., supra*; *Schleich v. Archbishop Bergan Mercy Hosp., supra*.

However, as noted above, actionable emotional distress must also be " ' "so severe that no reasonable person could have been expected to endure it." ' " *Sell v. Mary Lanning Memorial Hosp.*, 243 Neb. at 272, 498 N.W.2d at 525. Accord *Schleich v. Archbishop Bergan Mercy Hosp., supra*. Our case law establishes a high threshold of severity under this standard. For example, in *Sell*, the plaintiff was informed by hospital employees that her 17-year-old son had died in a motorcycle accident. On the following day, the plaintiff was asked by the mortician to view the body, and she discovered that it was not that of her son, but of another 17-year-old male who had died in the accident. The plaintiff then learned that her son was alive and receiving care at the hospital. The plaintiff testified that following this incident, she cried continually, had difficulty eating, and required medication in order to sleep. We concluded that "[w]ithout minimizing plaintiff's apparent and understandable heartache upon being told of her son's death," she had failed as a matter of law to establish emotional distress meeting the standard of " ' "so severe that no reasonable person could have been expected to endure it." ' " *Sell v. Mary Lanning Memorial Hosp.*, 243 Neb. at 272, 498 N.W.2d at 525.

Similarly, in *Andreasen v. Gomes*, 244 Neb. 73, 504 N.W.2d 539 (1993), *disapproved on other grounds, Darrah v. Bryan*

*Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998), parents sought recovery for emotional injuries resulting from the stillbirth of their child allegedly caused by the negligence of two physicians. The parents presented evidence that they suffered from headaches, nightmares, loss of sleep, and nausea, which an expert characterized as " 'severe emotional distress.' " *Id.* at 77, 504 N.W.2d at 542. We held that this evidence did not create a genuine issue of material fact with respect to actionable emotional distress. See, also, *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 731, 734, 496 N.W.2d 914, 916 (1993) (holding minor child's reaction to her father's death did not establish that death had "extraordinary effect, either psychological or physical" upon her, and therefore did not constitute " 'emotional distress . . . so severe that no reasonable person could have been expected to endure it' ").

While the evidence viewed in a light most favorable to Hamilton shows that he did experience diagnosable and clinically significant emotional distress resulting from the accident, it was not of sufficient severity to be actionable under our case law. Moore testified that posttraumatic stress disorder may range in severity from mild to severe. According to Moore, the posttraumatic stress disorder experienced by Hamilton falls within the lower half of the range, "[b]etween mild and moderate." On the basis of information obtained from Hamilton, Moore described him as "pretty well beat up emotionally for a short period of time, but before too long he went on with his life." Viewing this medical testimony, as well as Hamilton's testimony describing his symptoms, in a light most favorable to Hamilton, we conclude that the emotional injury so described cannot, as a matter of law, be considered so severe that no reasonable person could be expected to endure it.

Accordingly, although our reasoning differs significantly from that of the district court, we conclude that the personal representative was entitled to summary judgment and that the district court did not err in denying Hamilton's motion for new trial. We therefore affirm.

AFFIRMED.

HENDRY, C.J., and WRIGHT, J., not participating.