**Tommy R. JARRETT and Beverly Jarrett, Appellants,**

v.

**Michael B. JONES, Respondent.**

No. SC 88700.

Supreme Court of Missouri,
En Banc.

July 29, 2008.

Jessica L. Johnson, Timothy J. Boone, Columbus, David W. Ransin, Springfield, for Appellants.

Randy R. Cowherd, Kregg T. Keltner, Springfield, for Respondent.

PATRICIA BRECKENRIDGE, Judge.

Tommy R. and Beverly Jarrett appeal the trial court's grant of summary judgment in favor of Michael B. Jones. Mr. Jarrett sued Mr. Jones for negligently causing a collision between Mr. Jarrett's tractor-trailer and Mr. Jones' car, resulting in the death of Mr. Jones' two-year old daughter. Mr. Jarrett's claim sought damages for minor physical injury and emotional distress after he viewed the body of Mr. Jones' daughter. His wife, Beverly Jarrett, sued for loss of consortium. The trial court granted summary judgment for Mr. Jones on the basis that the Jarretts failed to present facts that would entitle them to recover damages for Mr. Jarrett's emotional distress as a bystander. Because Mr. Jarrett is a direct victim of the automobile accident and not a bystander, the judgment of the trial court is reversed, and the cause is remanded.

**Factual and Procedural Background**

On June 8, 2004, Tommy Jarrett, a professional truck driver, drove his tractor-trailer eastbound on Interstate 44 in Laclede County. At the same time, Michael Jones drove westbound with his wife and two daughters in the vehicle. It had been raining heavily, but the rain was lessening. At this point, Mr. Jones lost control of his automobile which spun across the median and collided with Mr. Jarrett's truck.

The collision caused Mr. Jarrett's knees to hit the steering wheel and dashboard, twisting his "ankle, knee." Immediately after the collision, Mr. Jarrett talked to a man who ran up to his truck to see if he was injured. He told the man he was all right and to check the other vehicle. Mr. Jarrett then jumped out of his truck and ran to Mr. Jones' car to check on the occupants. He saw Mr. Jones and his wife badly injured and saw the body of Mr. Jones' two-year old daughter, Makayla, who was killed in the collision.[1] He stayed at the side of Mr. Jones' vehicle and the Jones family until the police arrived. As a result of the accident, Mr. Jarrett suffered mental and emotional injuries, including post-traumatic stress disorder and feelings of anxiety, trauma, anguish and stress.

Mr. Jarrett and his wife, Beverly, brought suit against Mr. Jones for negligence in causing the collision. Specifically,

---

1. The Jones' other daughter sustained minor physical injuries.

they alleged that Mr. Jones was driving too fast for the wet road conditions and, therefore, was negligent in failing to operate his vehicle with the required decree of care. Mr. Jarrett alleged that Mr. Jones' negligence caused him injuries, including minor physical injuries, post-traumatic stress disorder, past wage and income loss, past pain and suffering, anxiety, emotional trauma, and stress.[2] Mr. Jarrett's wife sued for loss of consortium.

Mr. Jones filed a motion for summary judgment, which the trial court granted. Specifically, the trial court found that the Jarretts admitted that the sole cause of Mr. Jarrett's emotional distress was the viewing of Makayla's body after the collision, and not the collision itself, since the Jarretts did not deny that contention in Mr. Jones' statement of uncontroverted material facts. As such, the trial court found that Mr. Jones was entitled to judgment as a matter of law because: (1) Mr. Jarrett was not in the zone of danger when he viewed Makayla's death because he did not fear personal injury to himself at that point in time, and (2) Mr. Jones owed no duty to prevent Mr. Jarrett from viewing Makayla's body because he was injured and unconscious at the time.

The Jarretts raise three points on appeal from summary judgment.[3] First, the Jarretts assert that the trial court failed to apply the proper law relating to direct-victim recovery for damages of emotional distress and, instead, incorrectly applied the standard for bystander recovery. Alternatively, the Jarretts' claim that the trial court erred because, even if the standard for bystander recovery were applicable, they presented facts to demonstrate a genuine issue of material fact as to Mr. Jarrett's presence in the zone of danger. The Jarretts further claim that, under the standard for bystander recovery, the trial court erred in failing to consider proof that his emotional distress stemmed not only from his grief over the death of Makayla, but also from fear for his own life and safety.

### Standard of Review

██ Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04. Whether summary judgment is proper is purely an issue of law, and appellate review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are the same as those employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* Because the trial court's judgment is founded on the record submitted and the law, this Court need not

---

**2.** Mr. Jarrett's amended petition states, in relevant part:

14. As a direct and proximate result of the negligent acts and omissions of the Defendant, Plaintiff feared for his own life and safety and sustained the following injuries and damages:
   (a) injuries, including minor physical injuries and post traumatic stress disorder;
   (b) past expenses for medical treatment and medications in excess of $1,623.57;
   (c) past wage and income loss in excess of $45,000; and

(d) past pain and suffering, mental anxiety, emotional trauma and anguish, stress, which significantly affected his ability to perform usual daily activities, including returning to work.

**3.** Mr. Jones moved to strike the Jarretts' brief and dismiss the appeal for failure to comply with Rule 84.04(c). Upon review, this Court finds that the motion to strike and dismiss is baseless and, therefore, is overruled.

defer to the trial court's order granting summary judgment. *Id.* This Court must review the record in the light most favorable to the Jarretts, the party against whom judgment was entered. *Id.* "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.*

## Recovery of Damages for Emotional Distress in Negligence Cases

The Jarretts first claim that the trial court erred in entering summary judgment in favor of Mr. Jones because they presented facts that would permit them to recover damages for Mr. Jarrett's emotional distress as a direct victim, pursuant to *Bass v. Nooney Co.,* 646 S.W.2d 765 (Mo. banc 1983). They contend, therefore, that the trial court erred in applying a zone-of-danger analysis, an analysis used to determine whether a bystander plaintiff may recover damages for negligent infliction of emotional distress. *Asaro v. Cardinal Glennon Memorial Hospital,* 799 S.W.2d 595 (Mo. banc 1990).

The law applicable to recovering damages for emotional distress arising from negligence claims has developed significantly in the past quarter of a century. Prior to 1983, Missouri defendants were not liable for negligence resulting only in emotional distress unless the plaintiff suffered a contemporaneous traumatic physical injury. *Trigg v. The St. Louis, Kansas City & Northern Railway Co.,* 74 Mo. 147, 1881 WL 4742 (1881); *Pretsky v. Southwestern Bell Telephone Co.,* 396 S.W.2d 566, 568 (Mo.1965). The contemporaneous physical injury requirement was called the "impact rule."

In *Bass,* this Court abandoned the impact rule and adopted new and less restrictive requirements a plaintiff must establish to recover damages for emotional distress. 646 S.W.2d at 772–73. *Bass* held that a plaintiff may recover for emotional distress provided: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress, and (2) the emotional distress or mental injury is medically diagnosable and is sufficiently severe as to be medically significant. *Id.* The Court limited its holding to direct victims of a defendant's negligence, expressly declining to discuss the standard to be applied in bystander cases, where the plaintiff claims emotional distress solely from observing injury to a third party caused by defendant's negligence. *Id.* at 770 n. 3.

The issue of liability for a bystander's emotional distress was addressed seven years later in *Asaro.* In *Asaro,* the Court undertook to resolve the question left open in *Bass:* "May a plaintiff recover for emotional distress resulting solely from observing injury to a third party caused by a defendant's negligence?" 799 S.W.2d at 596. The Court answered affirmatively and expanded liability for emotional distress by recognizing a new cause of action for bystander plaintiffs. 799 S.W.2d at 596. Implicitly finding that bystander claims required a more restrictive test than direct-victim claims, to help ensure the authenticity of claims, the Court limited bystander recovery to a plaintiff within the zone of danger, i.e., "placed in a reasonable fear of physical injury to his or her own person." *Id.* at 599–600.

In the case at bar, the Jarretts characterize their claim as a direct-victim claim, while Mr. Jones asserts that their cause of action is a bystander claim for negligent infliction of emotional distress. Neither *Bass* nor *Asaro* addresses the distinction between a "direct victim" and a "bystander." *Bass* does describe bystander cases in a footnote as being "where a plaintiff

suffers mental or emotional distress upon observing death or injury to a third party caused by a defendant's negligence," but it is not clear whether the Court contemplated a direct participant's claim for emotional distress upon observing a third party's injury. 646 S.W.2d at 770 n. 3. *Asaro* states that it is addressing the question: "May a plaintiff recover for emotional distress resulting solely from observing injury to a third party caused by a defendant's negligence?" 799 S.W.2d at 596. Neither case expressly identifies the crucial distinction, i.e., whether the plaintiff was *directly involved* in the accident. Nevertheless, *Asaro's* inclusion of the element that the plaintiff must have been in the zone of danger would be nonsensical when applied to a direct victim who, by virtue of being a direct victim, is in the zone of danger.

Direct victims are persons directly involved in. the accident whose emotional distress is either caused by fear for their own safety or caused by the suffering of another. *See Kraszewski v. Baptist Med. Ctr. of Oklahoma,* 916 P.2d 241, 246 (Okla. 1996). Bystanders, in contrast, are persons not directly involved in the accident, but whose emotional distress is caused solely by observing acts that result in injury to a third party, rather than from the plaintiff's own personal involvement. *See id. See also* BLACK'S LAW DICTIONARY 214 (8th ed.2004) ("*bystander.* One who is present when an event takes place, but who does not become directly involved in it").

■ Where the plaintiff is a direct victim of the accident caused by the defendant's negligence, the defendant is liable for the foreseeable emotional distress resulting therefrom. The plaintiff's cause of action is not limited to emotional distress arising from fear for the plaintiff's own safety. *See Eyrich For Eyrich v. Dam,* 193 N.J.Super. 244, 473 A.2d 539, 546 (App.Div.1984) (direct victim's cause of action for emotional distress is "not limited to the psychological sequelae of fear for himself but rather comprehends all of the psychological sequelae which as a matter of reasonable foreseeability result from the episode as a whole"); *Pieters v. B–Right Trucking,* 669 F.Supp. 1463, 1470 (N.D.Ind.1987) (if plaintiff satisfies the standard for recovering emotional distress damages, Indiana courts do not "back up the analysis to ask whether the distress was caused by the plaintiff's own injuries or the injuries of the person sitting next to her when the crash occurred").

■ This Court recognizes the view that a plaintiff may suffer some emotional distress as a direct victim and some emotional distress as a bystander. *See Kapoulas v. Williams Ins. Agency, Inc.,* 11 F.3d 1380, 1384 (7th Cir.1993) (holding that plaintiff was a direct-victim for emotional distress arising from his participation in the accident that killed two children, but a bystander for emotional distress arising from his witnessing their deaths). For the reasons set forth below, however, this Court finds that where a direct victim seeks damages for emotional distress, the more restrictive standards for bystander recovery are inapplicable to any part of his claim.

First, *Asaro's* recognition of a cause of action for bystander recovery expanded liability for emotional distress; it did not limit the scope of recovery for direct-victim plaintiffs. As discussed above, *Asaro* addressed an issue explicitly left out of the *Bass* analysis—whether a bystander may recover for emotional distress from observing injury to a third party. *Asaro,* 799 S.W.2d at 596. The additional proof elements in *Asaro* for bystander recovery, therefore, apply only where *Bass* does not apply. More importantly, the policy concerns underlying limited recovery for bystanders, such as the worry that bystander

recovery encourages fraudulent claims, are not present where the plaintiff is a direct victim of the defendant's negligence. "With a direct victim . . . there is little fear that her claim is fraudulent or that defendants will be saddled with liability out of proportion to the degree of fault. The circumstances of the case 'guarantee' the 'genuineness' of [plaintiff]'s emotional distress." *Long v. PKS, Inc.*, 12 Cal.App.4th 1293, 1298, 16 Cal.Rptr.2d 103 (Cal.App. 1 Dist.1993); *See also Coughlin v. Tailhook Ass'n, Inc.*, 818 F.Supp. 1366, 1369 (D.Nev. 1993); *Pieters*, 669 F.Supp. at 1470–71.

Moreover, a plaintiff's direct involvement in an accident influences the plaintiff's emotional distress because the plaintiff's mental injuries are generally inseparable from the plaintiff's role in the event. *See Eyrich*, 473 A.2d at 546–47. Even if it were possible to identify separate sources of a plaintiff's distress, "the practical difficulties of requiring a trier of fact to apply different legal standards to produce an award of damages reasonably related to plaintiff's injuries causes [this Court] to conclude that a single standard should be applied." *Binns v. Fredendall*, 32 Ohio St.3d 244, 513 N.E.2d 278, 280 (1987).[4]

The facts in this case demonstrate how a direct victim's emotional distress from viewing injuries or death of another person involved in the accident are inseparate from the direct victim's role in the event. In their response to Mr. Jones' motion for summary judgment, the Jarretts admitted that his emotional injuries resulted from the death of Makayla in the collision. Specifically, the Jarretts admitted that Mr. Jarrett's emotional struggles, grief, and feelings of guilt after the collision stemmed from his viewing Mr. Jones' deceased daughter:

(a) The "worst image" for plaintiff was the "the 'baby' lying in the mangled car";

(b) Plaintiff experienced "a great deal of grief for the child who died";

(c) Plaintiff experienced the "paradox of knowing he had no responsibility in her death and wanting her to forgive him at the same time"; and

(d) Plaintiff "visualize[d] the little girl being in heaven" and "said she's the lucky one."

These admissions demonstrate that the grief and distress Mr. Jarrett experienced were a result of his participation in the accident that killed Makayla, and not simply from viewing her body. The totality of these admissions establishes that Mr. Jarrett's emotional distress arose from his direct involvement in the collision, coupled with Makayla's death.

The evidence, viewed in the light most favorable to the Jarretts, shows that Mr. Jarrett was driving a vehicle that was involved in a collision caused by Mr. Jones' negligence. The collision resulted in the death of Makayla Jones. Mr. Jarrett viewed her dead body and, subsequently, suffered emotional distress. Although he is suing for emotional damages caused by seeing a third party's death, his role was not that of a passive, shocked witness. His direct involvement in the collision greatly influenced his mental and emotional injury, causing him to have strong feelings of guilt and sadness for his part bringing about Makayla's death.

■ The fact that Mr. Jarrett got out of his truck and ran to check on the individu-

---

4. There are also practical difficulties in creating an artificial distinction as to when a direct victim becomes a bystander—when the direct victim gets out of his vehicle to offer aid to persons in the other vehicle involved in the collision, as in this case, as compared to when the direct victim turns his head to view another person in his own vehicle.

als in the other vehicle involved in the wreck does not render him a bystander at the time he observed the carnage of the wreck. Instead, Mr. Jarrett's viewing Makayla's body and feeling grief over her death are inseparable components of the emotional distress he suffered as a result of the whole traumatic event, caused by Mr. Jones' negligence. The direct-victim concept encompasses plaintiffs suffering emotional distress from observing the injury or death of a third party, so long as the plaintiff was directly involved in the same accident. Mr. Jarrett, therefore, seeks damages for emotional distress as a direct victim. Because Mr. Jarrett is a direct victim, the trial court erred in applying the bystander limitations to his claim of damages for emotional distress.

Courts from other jurisdictions faced with similar circumstances have likewise held that the bystander limitations do not apply. *See Long*, 12 Cal.App.4th at 1298, 16 Cal.Rptr.2d 103 (plaintiff, whose foster child died when plaintiff's car was struck from behind by a tow truck, was a direct victim, not a bystander, for purposes of determining the limits on recovery of damages for emotional distress arising out of witnessing the injury and death of foster child); *Hamilton v. Nestor*, 265 Neb. 757, 659 N.W.2d 321, 329 (2003) (familial relationship requirement for recovery of emotional distress damages did not apply because plaintiff was a direct victim of defendant's negligence, not a bystander, when she suffered emotional distress from a collision in which defendant and defendant's daughter was fatally injured); *See also Binns*, 513 N.E.2d at 281; *Helsel v. Hoosier*, 827 N.E.2d 155, 157 (Ind.App. 2005); *Kraszewski*, 916 P.2d at 247–48; *but see Montoya v. Pearson*, 140 N.M. 243, 142 P.3d 11 (App.2006) (court recognizes that direct-victim theory allows a plaintiff to recover for emotional distress suffered as a result of witnessing the death of another in the same accident, but declines to adopt direct-victim theory on policy grounds).

## Trial Court Erred in Granting Summary Judgment

■ The Jarretts' cause of action under these circumstances is a personal injury action for the negligent operation of an automobile where, as a direct victim of the accident, Mr. Jarrett claims damages for emotional distress from that accident. Any action for negligence requires the plaintiff to establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the plaintiff's injury was proximately caused by the defendant's failure. *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 (Mo. banc 1990). Where the plaintiff is a direct victim of the defendant's negligence and seeks damages for emotional distress, the plaintiff is required to prove two additional elements: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant. *Bass*, 646 S.W.2d at 772–73. *See also Turner v. General Motors Corp.*, 750 S.W.2d 76, 78 (Mo.App.1988); *Pendergist v. Pendergrass*, 961 S.W.2d 919, 923 (Mo.App. 1998); *Thornburg v. Federal Express Corp.*, 62 S.W.3d 421, 427 (Mo.App.2001).

■ Applying the law to the circumstances of this case, Mr. Jones owed a duty to exercise the highest degree of care in operating his automobile. Section 304.012.1, RSMo 2000. The record, viewed in the light most favorable to the Jarretts, would support a finding that Mr. Jones breached this duty. The Jarretts presented the deposition testimony of Mr. Jarrett

and other witnesses to the collision that Mr. Jones' vehicle came across the median and hit Mr. Jarrett's tractor-trailer under circumstances that prevented Mr. Jarrett from avoiding the accident. The Jarretts also presented a Missouri State Highway Patrol accident reconstruction report. In that report, a highway patrol officer stated his opinion that the accident occurred because: (1) Mr. Jones drove too fast for the wet road conditions at the time of the accident; (2) Mr. Jones failed to maintain his rear tires properly, and; (3) Mr. Jones over steered his vehicle when it began to hydroplane. The officer further opined that Mr. Jarrett could not have safely avoided the collision.

With respect to causation, the Jarretts set forth facts that would support a finding that Mr. Jarrett suffered post-traumatic stress disorder immediately after the accident and was treated for the disorder by his family physician and two licensed social workers. The affidavit of one of the social workers states that, in her professional opinion, Mr. Jarrett suffered from severe, acute post-traumatic stress disorder as a direct and proximate result of being personally involved in a collision that resulted in the death of a child.

With respect to the Jarretts' claim of damages for emotional distress, they presented facts that would support a finding that the two additional *Bass* elements for recovering damages for emotional distress are met. First, with respect to foreseeability, it is foreseeable that the negligent operation of a vehicle would cause an accident resulting in serious injury or death and that an ordinary person directly involved in the accident involving death or serious injury to others would be traumatized and suffer emotional distress. *See Bass,* 646 S.W.2d at 773 (applying an ordinary person standard on the issue of foreseeability).

Second, with respect to the severity of Mr. Jarrett's emotional distress, Mr. Jarrett testified that, after the accident, he "couldn't focus on anything," "wanted to die," "didn't want anything to do with anybody," and kept going over in his mind what he could have done to avoid killing Makayla. Mr. Jarrett and his wife testified in their depositions that, as a result of his severe emotional distress, he was unable to drive a vehicle for weeks after the accident and was unable to work as a truck driver for four months. Mr. Jarrett's family physician prescribed to him anti-anxiety and prescription sleep medications to deal with the effects of his emotional distress. Mr. Jarrett also received months of counseling and therapy. He was treated by two licensed social workers, both of whom diagnosed him with post-traumatic stress disorder. These facts set forth by the Jarretts would support a finding that Mr. Jarrett's emotional distress or mental injury was medically diagnosable and of sufficient severity to be medically significant.

Because the Jarretts presented facts that, if true, would prove each element of their claim, the trial court erred in granting summary judgment in favor of Mr. Jones.

## Conclusion

The trial court misapplied the law when it applied the limitations for bystander recovery to the Jarretts' direct-victim claim of damages for emotional distress. The record, viewed in the light most favorable to the Jarretts, does not establish that there were uncontested facts upon which Mr. Jones is entitled to judgment as a matter of law. The trial court, therefore, erred in granting Mr. Jones' summary judgment motion.

The Jarretts also assert that they presented facts entitling them to recover damages for emotional distress under the more

restrictive standards for bystander recovery. Mr. Jarrett, however, is a direct victim. The bystander limitations, therefore, have no application in this case.

The judgment of the trial court is reversed, and the cause is remanded.

STITH, C.J., PRICE, TEITELMAN, RUSSELL, and WOLFF, JJ., concur.

LIMBAUGH, J., dissents in separate opinion filed.

STEPHEN N. LIMBAUGH, JR., Judge, dissenting.

I respectfully dissent.

At the outset, I note the sad irony that the party to this action who is most subject to emotional distress—the father who lost his child—is the party being sued for having caused emotional distress to a stranger who merely saw the child. This, it seems to me, is the unfortunate result of the majority's misreading and misapplication of *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. banc 1983), and *Asaro v. Cardinal Glennon Memorial Hospital*, 799 S.W.2d 595 (Mo. banc 1990).

*Bass*, relying on the RESTATEMENT (SECOND) OF TORTS sec. 313(1)(a), holds that

> a plaintiff will be permitted to recover for emotional distress provided: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress; and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant.

*Bass*, 646 S.W.2d at 772–73. *Asaro* later recognized, however, relying in turn on the RESTATEMENT (SECOND) OF TORTS sec. 313(2), that the *Bass* rule "[has] no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other." *Asaro*, 799 S.W.2d at 597. *Asaro* then fashioned a different rule—the "zone of danger" rule—holding without qualification that "a plaintiff may recover for emotional distress resulting from observing physical injury to a third person only if the plaintiff is within the zone of danger." *Id.* at 596. Specifically, the plaintiff must prove (1) that the defendant should have realized that his conduct involved an unreasonable risk to the plaintiff, (2) that plaintiff was present at the scene of an injury producing, sudden event, (3) and that plaintiff was in the zone of danger, placed in a reasonable fear of physical injury to his or her own person. *Id.* at 600.

Under the more stringent zone of danger test, plaintiff here could not recover because he was not in a zone of danger, that is, he was not placed in a reasonable fear of physical injury to his own person when he viewed the dead child subsequent to the accident. The majority does not contend otherwise. Instead, the majority holds that plaintiff was a "direct victim" of defendant's negligence under the *Bass* test, rather than a "bystander" (indirect victim?) under *Asaro's* zone of danger test. A "direct victim," according to the majority, is a plaintiff "directly involved in the accident, whose emotional distress is either caused by fear for [his] or her own safety or caused by the suffering of another." As I understand this position, plaintiff was a "direct victim" because his injury—his emotional distress in viewing the body of the dead child—was incurred as part and parcel of the accident that caused the death of the child; in other words, both the accident itself and the plaintiff's subsequent viewing of the body were just a single event. The point is that the majority can classify plaintiff as a "direct victim" and avoid the zone of danger test only by

characterizing the sequence of events as a single event. And only then can plaintiff's injuries be said to emanate directly from the accident rather than the subsequent viewing.

And that gives rise to my initial disagreement: The evidence does not support the single event characterization, and in fact, there was a significant temporal disparity between the accident itself, the subsequent viewing of the body, and the onset of the distress to plaintiff. Under the majority's description of the scene, a collision occurred, and immediately thereafter plaintiff "talked to a man who ran up to his truck to see if he was injured." Plaintiff "told the man he was all right and to check the other vehicle," and then plaintiff, himself, "jumped out of his truck and ran to [defendant's] car to check on the occupants." It was at that time he first saw the body of the child, which led to his emotional distress. Plaintiff now concedes that he did not suffer emotional distress from the accident itself, but that the sole cause of his emotional distress was the viewing of the child's body after the accident. The facts, then, are clear that although plaintiff had been a participant in the accident, he was not injured in it, and by the time he observed the body, the accident was over. And at that point, plaintiff was no longer involved in the accident, but was a bystander attempting to help the victims of the accident.

Although the majority "recognizes the view that a plaintiff may suffer some emotional distress as a direct victim and some emotional distress as a bystander," which accommodates the kind of temporal distinction at play in this case, it rejects that view in favor of the notion that a plaintiff's emotional distress caused by the accident itself is "generally inseparable" from the emotional distress caused by observing a third-party's injuries. But that determination, of course, flies in the face of plaintiff's admission that he suffered no emotional distress from the accident, but only from the subsequent viewing of the body. Inexplicably, the majority finds that "[t]hese admissions demonstrate that the grief and distress [plaintiff] experienced were a result of his participation in the accident that killed [the child], and not simply from viewing her body." I am simply at a loss to understand how plaintiff's emotional distress was inseparable from the accident when the plaintiff, himself, maintained that his distress was separable.

This extended attempt to sort out the majority's maneuverings belies my greater concern about the case, which is that under *Asaro*, the Court has no legitimate reason to distinguish between liability to a "direct victim" and liability to a "bystander." That distinction, which according to the majority turns on "whether the plaintiff was directly involved in the accident," has no basis in *Bass* or *Asaro*. Although the majority states that *Asaro* "expanded liability for emotional distress by recognizing a new cause of action for bystander plaintiffs," *Asaro* did no such thing. *Asaro* is instead a *limitation* on *Bass* because it applies in *all* cases in which plaintiff's emotional distress resulted solely from observing injury to a third party, whether or not the observation occurred at the time the negligent act was committed (the collision in this case) or at any time thereafter (the observance of the injury after the collision). The holding of *Asaro* is unequivocal and unqualified: "[A] plaintiff may recover for emotional distress resulting from observing physical injury to a third person only if the plaintiff is within the zone of danger." *Asaro*, 799 S.W.2d at 596. In short, *Asaro* precludes the kind of "direct victim" recovery the majority now approves.

Finally, I suggest that the majority has overlooked that its "direct victim" expansion of the cause of action for negligent infliction of emotional distress will cause wildly incongruous, if not absurd results. Take, for example, the situation in *Asaro* itself. Plaintiff Asaro was the mother of a five-year-old child who underwent heart surgery that was so botched that the child's pre-operative symptoms of pain and fainting spells persisted, requiring a second surgery to accomplish what was intended by the first surgery. As a result of the doctors' negligence, the mother claimed that she, herself, "underwent severe, medically diagnosable and significant emotional distress and depression." Id. at 597. This Court held, however,

> [w]hile [mother] was intimately involved with her son's treatment and understandably distressed at the condition of his health, she was not the patient. She faced no personal peril. Her understandable distress follows solely from seeing the harm and suffering endured by her young son. Her petition states no facts, nor permits such inferences as might bring her averments within the zone of danger standard we adopt today.

*Id.* at 600. Neither the mother who observed her suffering child in *Asaro* nor the stranger who observed the dead child in this case were in a zone of danger, but the stranger recovers, and the mother does not. In these situations, one would think the law should favor the mother of a child before a stranger to a child, or at least that the law should apply the same to both.

For the foregoing reasons, I would affirm the judgment of the trial court dismissing plaintiff's claim.